UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MARTELL ELECTRIC, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:22-CV-430 RLM-MGG |
| | ) | |
| STEPHEN TISHHOUSE, et al., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Martell Electric, LLC, entered into an asset acquisition agreement with Stephen Tishhouse, Carrie Tishhouse, and Tishhouse Electric, Inc. Less than a year later, Martell Electric sued the Tishhouses and Tishhouse Electric for breach of contract, tortious interference with business relationships, tortious interference with contractual relationships, and conversion. The defendants now move to dismiss all claims. For reasons explained in this opinion, the court denies the motion to dismiss as to the breach-of-contract claim and grants the motion to dismiss as to the remaining claims.

BACKGROUND

This is a case about a business deal gone awry. Martell Electric entered into an asset acquisition agreement with Tishhouse Electric. Martell Electric agreed to purchase Tishhouse Electric's assets as well as purchase orders, sales contracts, leases, and good will, among other things. In return, Tishhouse Electric agreed to cease operations and Stephen and Carrie Tishhouse (who seem

to be the owners of Tishhouse Electric, though the complaint doesn't allege as much) agreed not to compete with Martell Electric for three years within a certain geographical area. Martell Electric agreed to hire Stephen and Carrie Tishhouse on an at-will basis.

Martell Electric alleges that Tishhouse Electric, Stephen Tishhouse, and Carrie Tishhouse reneged on their part of the bargain. They allegedly continued to use the Tishhouse website to generate business; accepted money from at least one customer and deposited that money into a bank account; maintained accounts with various service vendors and issued quotes using the Tishhouse name; defamed Martell Electric; and otherwise violated the agreement. Martell Electric brings claims against the defendants for breach of contract, tortious interference with business relationships, tortious interference with contracts, and conversion. The defendants move to dismiss each claim for failure to state a claim on which relief could be granted. Fed. R. Civ. P. 12(b)(6).

STANDARD OF REVIEW

A court considering a Rule 12(b)(6) motion to dismiss construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). But A complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and must have enough factual matter to state a claim that plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The plaintiff must allege enough details about the case's subject matter to present a story that holds together. <u>Bilek v. Fed. Ins. Co.</u>, 8 F.4th 581, 586 (7th Cir. 2021). Even under notice pleading standards, a plaintiff must allege more than bare legal conclusions. <u>Bissessur v. Ind. Univ. Bd. of Trs.</u>, 581 F.3d 599, 602 (7th Cir. 2009).

DISCUSSION

The defendants argue that each of Martell Electric's claims should be dismissed because none have enough factual allegations to state a plausible claim and some lack allegations as to specific elements of the claims.

*Breach of Contract*

The complaint alleges that the parties entered into an asset acquisition agreement. The agreement obligated Martell Electric to purchase the defendants' assets and other property and as well as hire Stephen and Carrie Tishhouse. In exchange, the defendants would cease operating Tishhouse Electric, and Stephen and Carrie Tishhouse would agree not to compete with Martell Electric for three years in a specific geographic area. The complaint alleges that after the parties entered into the agreement, Stephen and Carrie Tishhouse continued to operate the Tishhouse Electric website to generate business, accepted and

3

deposited a check, maintained vendor accounts using the Tishhouse name, issued quotations using the Tishhouse name, and filed an annual report with the Michigan Department of Licensing and Regulatory Affairs indicating that Tishhouse Electric was still in business. Martell Electric claims it's kept its end of the bargain while the defendants haven't kept theirs.

A breach-of-contract claim requires that (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage because of the breach. Collins v. McKinney, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). The defendants argue that Martell Electric's allegations are too vague – they allege that the defendants took certain actions, like operating the Tishhouse website, but don't allege that this was done in competition with Martell Electric. They assert that Martell Electric intentionally omitted a copy of the agreement from the complaint so that the court would be left without important context; the agreement might have required that the Tishhouses take time to wind down operations, so the alleged breaches were indeed required by the agreement.

The defendants raise issues that might ultimately prove that they're not liable, but those issues don't show that Martell Electric's breach-of-contract claim is implausible or that the complaint otherwise fails to state a breach-of-contract claim. The complaint alleges that the contract required the defendants to stop operating their business but that they did so by maintaining their website, offering quotes to prospective clients, maintaining accounts with third-party vendors, and the like. Though the factual allegations are somewhat vague, they explain a few different ways that the defendants' actions could make them

4

liable for breaching the agreement. Perhaps the defendants' actions were all above board and were even required by the agreement, but that's to be resolved after the motion-to-dismiss stage. The court will deny the motion to dismiss as to the breach-of-contract claim (Count I).

*Tortious Interference Claims*

The defendants argue that the claim for tortious interference with business relationships and the claim for tortious interference with contracts should be dismissed because the alleged facts are too vague and because they don't allege any illegal conduct. A claim for tortious interference with contracts requires: (1) the existence of a valid relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with the relationship; (4) the absence of justification; and (5) damages. Miller v. Cent. Ind. Cmty. Found., Inc., 11 N.E.3d 944, 961 (Ind. Ct. App. 2014). A claim for tortious interference with contracts has similar elements: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages. Coleman v. Vukovich, 825 N.E.2d 397, 403 (Ind. Ct. App. 2005). The plaintiff must also show that the defendant engaged in illegal conduct, though defamation doesn't constitute illegal conduct for purposes of tortious interference. Miller v. Cent. Ind. Cmty. Found., Inc., 11 N.E.3d at 961. Nor is breach of conduct the sort of illegal conduct that supports a tortious interference claim – when that's the case, the plaintiff's remedy lies in contract

5

rather than tort. <u>Smith v. Biomet, Inc.</u>, 384 F. Supp. 2d 1241, 1252 (N.D. Ind. 2005). "To hold otherwise would be to transmute the breach into the tort of tortious interference with business relations." <u>Id.</u> (citing <u>Jeppesen v. Rust</u>, 8 F.3d 1235, 1239 (7th Cir. 1993) (internal quotes omitted)).

The defendants argue that the complaint doesn't provide enough detail as to how the defendants interfered with any relationship or induced any breach of contract. They further contend that the complaint doesn't state any tortious interference claim because either claim requires illegal conduct by the defendants but add that Martell Electric doesn't allege any illegal conduct; they allege defamatory statement and breach of contract, but neither amounts to illegal conduct for a tortious interference claim.

Martell Electric alleged that the defendants continued to maintain vendor accounts, issued quotes in the Tishhouse name, and incurred damages as a result. Martell Electric argues their allegations are enough for notice pleading because the defendants are best suited to know which business and contractual relationships they interfered with since the defendants sold those customer lists, business records, and the like, under the asset acquisition agreement. Martell Electric further contends that they properly alleged tortious interference by alleging the defendants "unjustifiably contacted third-parties with whom Martell did business". (Doc. 21 at 5). Finally, Martell Electric argues that requiring more would improperly heighten the pleading standard beyond notice pleading and that the defendants were able to prove diversity jurisdiction, so they must have had adequate notice of the claims.

6

Martell Electric's complaint doesn't allege enough factual content for either tortious interference claim. The complaint alleges that Martell Electric has business relationships and contracts with third parties and that the defendants unjustifiably interfered with those business relationships resulting in damages. Those allegations aren't specific facts – they're recitations of the elements of a tortious interference claim. Neither does the complaint allege any facts suggesting illegal activity by the defendants. The only allegations approaching illegal conduct are defamation and breach-of-contract, and those actions don't support a tortious interference claim. <u>Smith v. Biomet, Inc.</u>, 384 F. Supp. 2d at 1252. On the other hand, Martell Electric plausibly alleges that the defendants continued to do business with and contact some third parties after they reached their agreement. But without more (say, facts about the relationships and contracts that were allegedly interfered with, how they were interfered with, what illegal conduct occurred, and the like), these allegations allow an inference for breach-of-contract claims, not an inference that the defendants could be liable for tortious interference. *See* <u>id.</u> Lastly, that the defendants managed to assert federal jurisdiction doesn't show that Martell Electric has stated a claim. The defendants had to establish some jurisdictional facts that would support federal jurisdiction, <u>Meridian Sec. Ins. Co. v. Sadowski</u>, 441 F.3d 536, 543 (7th Cir. 2006). That burden required some degree of speculation and the defendants' success in meeting that standard doesn't relieve the plaintiff of alleging enough details "to present a story that holds together." *See* <u>Bilek v. Fed. Ins. Co.</u>, 8 F.4th,

581, 586 (7th Cir. 2021). The court will grant the motion to dismiss as to Martell Electric's tortious interference claims (Counts II and III).

*Conversion*

Count IV of Martell Electric's complaint is for conversion. A conversion claim requires that the defendant "knowingly or intentionally exerted unauthorized control over property of another." Ind. Code § 35-43-4-3(a); *see* McKeighen v. Daviess Cnty. Fair Bd., 918 N.E.2d 717, 723 (Ind. Ct. App. 2009).

The defendants contend that Martell Electric hasn't stated a claim for conversion because the factual allegations are too vague, and a plaintiff can't bring a conversion claim for unspecified money or for refusal to pay a debt. Bowden v. Agnew, 2 N.E.3d 743, 750 (Ind. Ct. App. 2014). Money only gives rise to a conversion claim if it's "capable of being identified as special chattel," Id.

Martell Electric's conversion claim must be dismissed not because the property isn't special chattel (a check is usually issued to a specific recipient for a specific purpose) but because there aren't enough factual allegations to state a plausible claim. The complaint alleges that the defendants "knowingly and/or intentionally exerted unauthorized control over Martell's property," resulting in damages. (Doc. 2, at 4). Those allegations aren't specific factual allegations but are threadbare recitations of the elements of a conversion claim. The only other allegation relating to conversion is that the defendants "accepted money from at least one (1) customer and deposited the check into a bank account." That allegation is entirely vague as to who the check came from, what the check was

for, who should've deposited the check, and whose bank account the check was deposited into. Although it's difficult to quantify the facts needed to state a claim, without facts of that sort, the complaint doesn't allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court will grant the motion to dismiss as to Martell Electric's conversion claim (Count IV).

CONCLUSION

The court DENIES the defendants' motion to dismiss as to Count I (breach of contract) and GRANTS the defendants' motion to dismiss as to Counts II, III, and IV (tortious interference with business relationships, tortious interference with contracts, and conversion, respectively). Counts II, III, and IV are DISMISSED.

SO ORDERED.

ENTERED:   November 3, 2022

_____/s/ Robert L. Miller, Jr._
Judge, United States District Court