UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARTELL ELECTRIC, LLC, ) | |
| ) | |
|    Plaintiff/Counter Defendant, ) | CASE NO. 3:22-CV-00430-JD-MGG |
| ) | |
| v. ) | Lower Court Case No. 71D06-2205-CT-165 |
| ) | |
| STEPHEN TISHHOUSE, CARRIE ) | |
| TISHHOUSE, and TISHHOUSE ) | |
| ELECTRIC, INC. ) | |
|    Defendants/Counter-Plaintiffs. ) | |

**PLAINTIFF/COUNTER-DEFENDANT'S
BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant Martell Electric, LLC ("Martell"), by counsel, pursuant to N.D. Ind. L.R. 56-1, states as follows for its Brief in Support of Motion for Partial Summary Judgment:

**I.   Introduction.**

In their Counterclaims arising out of an Asset Acquisition Agreement, the Tishhouses seek recovery for breach of alleged employment agreements and for additional revenue in connection with a particular project. Both claims fail upon the straightforward application of contract law principles to undisputed facts. As set forth more fully herein, there was no commitment to enter into employment agreements, no employment agreements were entered into, and Stephen Tishhouse, in particular, made clear he had no expectation of an employment agreement with Martell.

Further, with regard to the shared revenue, this obligation regarded only projects under contract at the time the Asset Acquisition Agreement was entered. The undisputed facts show that, with regard to a specific project – the Wolverine Pinehurst project – no contract was not

entered until approximately six months after the Asset Acquisition Agreement. Accordingly, Martell is entitled to summary judgment on these claims and issues.

II. **Factual Background**.

   a. *The Parties Agree to Enter an Asset Acquisition Agreement.*

Martell is an Indiana limited liability company, with its principal place of business in South Bend, Indiana. (Ex. A, ¶ 1)[1]. Tishhouse is a Michigan corporation operating in Kalamazoo, Michigan and surrounding areas. (Ex. A. ¶ 2).

In the Spring of 2021, the Parties began discussions regarding the sale of substantially all Tishhouse assets to Martell. (Ex. B, p.17). As part of the process, proposed terms were set forth on two separate term sheets. (Ex. B. p 18). The first, dated May 24, 2021 and the second dated May 25, 2021. (Ex. C; Ex. D). Both term sheets provided details indicating the transaction would be an asset sale, and further included an outline of a potential employment offer being made to Tishhouse's principals, Stephen and Carrie Tishhouse, as well as how the entities would share revenue associated with work in process at the time the sale is closed. (Id.)

On or around June 7, 2021, the Tishhouses were provided a draft Asset Acquisition Agreement ("Draft Agreement"). (Ex. B p. 24; Ex. E). Both Stephen and Carrie Tishhouse read and reviewed the Draft Agreement. (Ex. B. p.26)(Ex. I, p. 20).

   b. *The Agreement's Provisions Regarding Employment.*

Article VII of the Agreement, entitled "Items to be Delivered at Closing by Tishhouse", included the following:

---

[1] Citation to the record refer to the Exhibits as set forth in the separate Statement of Undisputed Material Facts.

> 7.1-3 Agreements. Separate Employment Agreements between Martell and Stephen Tishhouse and Carrie Tishhouse terms of which shall include, but not be limited to, a covenant not to compete together with the terms in the Term Sheet signed by the Parties on May 25, 2021.
>
> (Ex. E).

The parties executed a final Asset Acquisition Agreement on June 18, 2021. (Ex. B. p. 27, Ex. F)("Agreement"). In the final executed Agreement, the employment provisions were significantly modified, and read as follows:

> The parties contemplate entering into at-will Employment Agreement with Stephen Tishhouse and Carrie Tishhouse consistent with the terms of the Term Sheet between the parties, attached hereto as Exhibit 3, and as otherwise mutually agreeable to the parties.
>
> (Ex. F. Section 5.4)

Following the closing, no separate employment agreements were entered into between Martell and Stephen Tishhouse or Carrie Tishhouse (Ex. B, p. 34). In fact, Stephen Tishhouse elected to remain a bargaining unit employee, subject to a Collective Bargaining Agreement with the Kalamazoo Local Union 131 of the International Brotherhood of Electrical Workers ("IBEW") rather than become employed directly with Martell. (Ex. B, p. 26). As such, the terms of Stephen Tishhouse's employment during this period were set forth in the IBEW Collective Bargaining Agreement, including his pay rate, benefits, vacation, and a process for resolving dispute by filing grievances. (Ex. B, p. 59 – 60). Stephen Tishhouse further acknowledged that his employment with IBEW 131 precluded him from entering into an employment agreement with Martell:

> Q. Okay. Is it possible to be a bargaining unit employee and a non-bargaining unit employee at the same time?
>
> A. No, no.
>
> (Ex. B. p. 62).

Carrie Tishhouse's job performance suffered while employed by Martell and was characterized by several mistakes, including errors in handling the company's payroll. (Ex. I, pp. 72-73). On or around April 15, 2022, the employment of Stephen and Carrie Tishhouse was terminated. (Ex. J and Ex. K, ¶ 19; Ex. B, P. 57; Ex. I, p. 52). Following his termination, Stephen Tishhouse did not file any grievance pursuant to the Collective Bargaining Agreement. (Ex. B, p. 61).

    c.   *The Agreement's Revenue Sharing Provisions.*

Article II of the Agreement provided the terms under which revenue would be shared in connection with Work In Process as of the closing date. (Id., Section 2.1). Article 2.1-1 of this article states:

> For any Work in Process under contract as of the Closing Date that has not commenced as of the Closing Date, Martell shall perform the work pursuant to the terms of the contract with the Customer. Following completion of the work and the determination of all costs, including but not limited to labor, material, and equipment, Martell shall invoice the Customer. Upon payment by Customer, Martell shall pay Tishhouse an amount equal to 50% of the net proceeds of the work.
>
> (Ex. F.)

Section 2.1-2 addressed work that had commenced as of the Closing Date, stating:

> For any Work in Process that has commenced or for which materials or equipment have been orders as of the Closing Date, Martell shall perform the work pursuant to the terms of the contract with the Customer. Upon completion of the work, Tishhouse shall pay Martell upon receipt of an invoice an amount equal to 110% of Martell's labor, equipment, and material. Tishhouse shall invoice the customer.
>
> (Ex. F.)

The Agreement included an integration clause, stating:

> This Agreement contains the entire agreement between Tishhouse and Martell with respect to the subject matter hereof. All representations, promises, and prior or contemporaneous understandings between the parties are merged into an expressed in this instrument, and any and all prior agreements between the parties

are merged into and expressed in this instrument, and any and all prior agreements between the parties, except as herein provided, are hereby cancelled.

(Ex F, Section 8,1)

More than six months after the Closing Date, on December 29, 2021, Martell received an executed contract for a project referred to as the Pinehurst Apartment, with the builder Wolverine Building Group. (Ex. B P. 74-75; Ex. H) This project was referred to on the exhibit to the Parties Agreement as "Not formally approved in writing but priced out for Wolverine." Prior to the executed contract in December of 2021, the scope of the contract had not been established. (Ex. B P. 66). Stephen Tishhouse explained that the project was not able to start under the initially projected October 2021 start time:

> Q.   Did it start in October of '21?
> A.   They didn't sign the contract. You provided me a copy of the signed contract in December, so it couldn't start in October.

(Ex. B. p. 70).

At the time the Agreement was signed, no money had been paid in connection with the Pinehurst project, no work had begun, and no material had been ordered. (Ex. B. p. 43). Stephen Tishhouse explained at the time, in an email dated July 7th, 2021, that "We do not have a contract yet, nothing can be ordered." (Ex. B, p. 52; Ex. G).

The Pinehurst project was further delayed based upon the need for the approval of funding from the State of Michigan. (Ex. B, p. 78). As Carrie Tishhouse explained, despite having submitted bids on similar state funded projects, Tishhouse had in the past experienced jobs that ultimately did not go forward because the state funding was not provided. (Ex. I, p. 37).

5

### III. Argument

   a. *Summary Judgment Standard.*

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*, citing *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013).  In *Palmer*, the court, citing *Scott v Harris*, 550 U.S. 372, 380 (2007), noted that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a summary judgment motion." *Palmer*, 928 F.3d at 563.

In responding, the non-moving party cannot rest on the pleadings and must identify facts that raise more than a mere scintilla of evidence to create a dispute of material fact regarding any essential element of their legal claims on which they bear the burden of proof. *Nicholson v. City of Peoria, Illinois*, 860 F.3d 520, 523 (7th Cir. 2017). If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment. *Id.*, citing *Burn v. Bd. Of Regents*, 851 F.3d 690, 694 (7th Cir. 2017).

   b. *The Court Should enter Summary Judgment on Count I of the Tishhouse's counterclaim.*

      i. *The Parties Never Entered into Employment Agreements and such agreements were not required by the Asset Acquisition Agreement. As a result, Summary Judgment should be entered against the Tishhouses in Connection with Count I of their Counterclaim.*

The federal court applies the applicable state law in determining the question of Contract formation. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010).  Under Indiana

law, the existence of a contract is a question of law when basic facts are not in dispute. *Schuler v. Graf*, 862 N.E.2d 708, 715 (Ind. Ct. App. 2007)(*citing Fox Development Inc. v. England*, 837 N.E.2d 161, 165 (Ind. Ct. App. 2005).[2] The formation of a contract requires offer, acceptance, and consideration. *Jernas v. Gumz*, 53 N.E.3d 434, 445(Ind. Ct. App. 2016). Such offer and acceptance must be on all essential terms or elements of the transaction. *Wallem v. CIS Industries, Inc, 725 N.E.2d 880, 884 (*Ind. Ct. App, 2000*)*("The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract"); *see also Schuler*, 862 at 713, ("A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract.").

When a contract includes an integration clause providing that the written document embodies the complete agreement between the parties, "the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Yellow Book Inc. v. Central Indiana Cooling & Heating, Inc*., 10 N.E.3d, 22, 27 (Ind. Ct. App. 2014); *Care Group Heart Hospital, LLC v. Sawyer*, 93 N.E.3d. 745, 756 (Ind. 2018)("When a contract is unambiguous, we typically do not go beyond the four corners of the contract to investigate meaning.")

The plain language of the Agreement unambiguously makes clear that the parties merely contemplated entering into employment agreements, and, in the event they did, such agreements would be at-will employment. Moreover, the Agreement's reference to Exhibit 3 – the Term Sheet -- provides for some terms that would be included in such an agreement, but not all such terms. This is made clear by language in this section referring to additional terms that are

---

[2] The Parties' Asset Acquisition Agreement, at Section 8.7 provides that the disputes arising out of the Agreement are to be governed by Indiana law.

"otherwise mutually agreeable to the parties." In other words, the term sheet attached as Exhibit 3 would supply some of the terms of a future Employment Agreement, if entered into, but clearly Exhibit 3 is not itself an "employment agreement" and does not somehow supersede the terms of the Section 5.5. *See State v. Koorsen*, 181 N.E3d. 327, 335 (Ind. Ct. App. 2021)(noting that "the relevant intent is not the parties' subjective intentions but the outward manifestation thereof."). The tentative and non-committal nature of this is further made clear by Stephen Tishhouse's testimony, set forth more fully below, regarding entering into an Employment Agreement with Martell, stating, "I was never going to do that." Read as a whole, the language of the Agreement, at most, refers to the potential of employment agreements in the future, which in fact never materialized.

The plain language of the Agreement, with its reference to merely contemplating an employment agreement, and making clear that other mutually agreeable terms would have to be developed in the future, establishes that at the time the Agreement was executed, there was no mutual assent with respect to any Employment Agreements.

Employment agreements on behalf of Stephen or Carrie were not produced nor executed between the Parties.[3] Based on the foregoing, Martell is entitled to the entry of summary judgment in its favor on all of the Tishhouse's claims arising of the assertion of an employment agreement.

---

[3] To the extent, Defendants seek to argue such an agreement was oral, their position is contradicted by the statute of frauds. *Whiteco Industries, Inc. v. Kopani*, 514 N.E.2d 840, 846 (Ind. Ct. App. 1987)("…it follows then, that the agreements concerning their employment were unenforceable pursuant to the State of Frauds, which requires that contracts which cannot be performed within one year must be in writing, signed by the party charged or his representative.")

> ii. *Stephen's election to remain subject to the IBEW 131 Collective Bargaining Agreement Forecloses his Employment Claim against Martell.*

Stephen's separate claim to entitlement of the benefits of an employment contract with Martell is particularly specious, considering his status as a IBEW 131 bargaining unit employee. As he acknowledged, he made the election to be employed by the Union and not directly with Martell. In fact, Stephen noted he never intended to be directly employed by Martell at all, stating, "I was never going to do that. And that's why I made them put the union as an option here because first they didn't want me to have the union as an option." (Ex. B, p. 22). As a result, Stephen has brought a claim against Martell that he concedes cannot be supported. This concession provides a separate independent basis to enter summary judgement against Stephen Tishhouse's claims arising out of an alleged employment agreement.

> c. *The Court should enter Summary Judgment on Count II of the Tishhouses's Counterclaim to the extent they seek profit sharing in connection with The Wolverine Project because it was Not Under Contract at the time the Agreement was executed.*

The Tishhouse's claims for shared revenue pursuant to the Wolverine Pinehurst project fail because the project was not under contract at the time the Agreement was signed. The Agreement, at section 2.1, clearly provides that revenue would be shared for work that is "under contract." (Ex. G). While defendants will indicate that they had been in discussions about this project prior to execution of the Agreement, the undisputed facts and basic tenets of Indiana contract law demonstrate that no agreement was entered with Wolverine until six months after execution of the Agreement for multiple reasons. First, the scope of the contract was not determined at the time the Agreement was signed. Second, no work had been performed pursuant to any contract related to the project. Third, no consideration had been exchanged between the parties. Critically, Stephen Tishouse, in July of 2021, admitted no material could be ordered because "there was no contract yet." Moreover, while the Tishhouses will argue that Wolverine

told them they were the only bidder on the project, Carrie Tishhouse acknowledged there are no guarantees the project will go forward at all. She acknowledged that until the state funding is finally approved, the project was not guaranteed and in fact, Tishhouse had past experience with projects that had been bid but did not ultimately go forward due to the state funding. Accordingly, at the time that the Asset Acquisition Agreement was signed, there had been no contract, written or oral, and no meeting of the minds between Wolverine and Martell. Accordingly, Martell is entitled to summary judgment in its favor on Count II of the Tishhhouse's Counterclaim to the extent it asserts a right to shared revenue from the Wolverine Pinehurst project.

## IV. Conclusion

Based on the foregoing, Martell Electric LLC requests that the Court enter Summary Judgement in its favor and against the Tishhouses on Count I of their Counterclaim and Count II to the extent it includes the Wolverine Pinehurst Project.

Respectfully submitted,

SOPKO, NUSSBAUM, INABNIT & KACZMAREK

By: /s/ Kevin W. Warren
Kevin E. Warren, # 26638-64
Brent E. Inabnit, #17387-71
5th Floor - Plaza Building
210 South Michigan Street
South Bend, Indiana 46601
Telephone: (574) 234-3000
Facsimile: (574) 234-4220
kevinw@sni-law.com
brenti@sni-law.com
Attorneys for Martell Electric, LLC

CERTIFICATE OF SERVICE

     I hereby certify that on May 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Eric Misterovich, Revision Legal, PLLC.

/s/ Kevin E. Warren