UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARTELL ELECTRIC, LLC, | ) |
|    Plaintiff/Counter Defendant, | ) CASE NO. 3:22-CV-00430-CCB |
| v. | ) Lower Court Case No. 71D06-2205-CT-165 |
| STEPHEN TISHHOUSE, CARRIE TISHHOUSE, and TISHHOUSE ELECTRIC, INC. | ) |
|    Defendants/Counter-Plaintiffs. | ) |

**MARTELL ELECTRIC LLC'S RESPONSE TO TISHHOUSES' MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant, Martell Electric, LLC ("Martell"), by counsel, states as follows for its Response to Defendants/Counter-Plaintiffs' Motion for Judgment on the Pleadings and Partial Summary Judgment:

**I.  The Tishhouses have Filed a Dual Motion in Violation of the Northern District of Indiana Local Rules.**

In contrast to the requirements of N.D. Ind. L.R. 7-1(a), the Tishhouses' have submitted a single filing containing two distinct motions – the first a Motion for Summary Judgment on their claims alleging the existence of employment agreements and entitlement to certain proceeds for work in process and the second a Motion for Judgment on the Pleadings, seeking to dismiss Martell's claims. The reasons for the Northern District's local rule and the inefficiency arising out of the Tishhouses' violation of the rule are evident in light of the Tishhouses' filing, which in a single motion implicates different standards of review, different evidentiary standards and even different deadlines.

1

For instance, a summary judgment motion under Fed. R. Civ. P 56 "is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*, citing *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). In responding, the non-moving party cannot rest on the pleadings and must identify facts that raise more than a mere scintilla of evidence to create a dispute of material fact regarding any essential element of their legal claims on which they bear the burden of proof. *Nicholson v. City of Peoria, Illinois*, 860 F.3d 520, 522 (7th Cir. 2017).

In contrast, in considering a Rule 12(c) motion, the court must determine if the pleadings demonstrate that there are no material issues of fact to be resolved and that the moving party is clearly entitled to judgment as a matter of law. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). *See also Federated Mutual Insurance Company v. Coyle Mechanical Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020); *Alexander v. City of Chicago*, 994 F.2d 333, 335-336 (7th Cir. 1993). When ruling on a Rule 12(c) motion, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Loud Records LLC v. Minervini*, 621 F.Supp.2d 672, 676 (W.D. Wis. 2009); *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017). The motion is granted only if it appears beyond doubt that the plaintiff cannot prove any facts that would support a claim for relief. *In re Raymond Professional Group, Inc.*, 386 B.R. 678, 681 (Bankr. N.D. Ill. 2008); *Raffel Systems, LLC v. Man Wah Holdings Ltd., Inc.*, 570 F.Supp.3d 613, 637 (E.D. Wis. 2021).

## II. Martell is Entitled to Summary Judgment in its Favor on the Tishhouses' Claims regarding the Employment Agreement.

The Tishhouses contend that the Acquisition Agreement itself constitutes an employment agreement. Martell set forth in detail in its Motion for Summary Judgment (D.E. # 51) that the Tishhouses' employment following the execution of the Acquisition Agreement was not subject to any employment agreements. The Tishhouses' argument in support of summary judgment fails to alter this conclusion.

In fact, the very terms of the Tishhouses' argument support Martell's position that, at best, the Acquisition Agreement merely referred to an indefinite possibility that such agreements may be entered. Specifically, the Tishhouses note that Section 5.5 of the Acquisition Agreement states that, "at some point in the future, the parties will give thought to an at-will employment agreement that is consistent with the Term Sheet…" (Tishhouse Brief. p. 6). Such a statement is a clear admission that the Acquisition Agreement and associated Term Sheet do not themselves constitute an employment agreement. Moreover, the language does not contain a commitment to do so, but merely to "give thought to" such an agreement at some future date. (*See also*, Tishhouse Brief, p. 10, referring to the employment agreements as a "future agreement.").

It is undisputed that no separate employment agreements were ever executed between the Parties. The Tishhouses never address the fact that no such agreements were ever executed. Critically, the Tishhouses also fail to address Stephen Tishhouse's testimony that he never intended to enter into an employment agreement with Martell, and, as an employee subject to a separate collective bargaining agreement, was absolutely precluded from entering a separate

3

employment agreement with Martell. Stephen noted he never intended to be directly employed by Martell at all, stating, "I was never going to do that." (Ex. B, p. 22)

Even if the Court were to determine employment agreements exist, the Tishhouses further ask the Court to ignore the fact that, at most, the Parties only thought about potentially entering into agreements that would have been "at will" containing no promise of employment for any particular duration. The Tishhouses appear to argue that, because the words "at-will" were only used once in the Acquisition Agreement, it is somehow entitled to less consideration (Tishhouse Brief, p. 7). However, this position flies in the face of the very authority relied on by the Tishhouses merely two pages later in its brief. (Tishhouse Brief, p.9, citing *Norfolk Southern Railway Company v. Global Tower, LLC*, 620 F. Supp.3d. 784, 797 (N.D. Ind. 2022)("Indiana law requires contracts to be construed so as to not render any words, phrases, or terms, ineffective or meaningless.") Despite their reliance on this legal premise, this is exactly what the Tishhouses are asking the Court to do.

Nevertheless, without factual or legal support, the Tishhouses go on to ask the Court to insert significant new terms to the alleged contract, somehow determining that the "at-will" provision applies only to the period of time following an initial two-year contractual period. (Tishhouse Brief, p. 6).

Despite arguing that the Acquisition Agreement is unambiguous, the Tishhouses also argue that the Acquisition Agreement's use of the term "at-will" creates a patent ambiguity. In doing so, the Tishhouses argue, with reference to *Noble Romans*, that the Court must interpret the contract in a manner that "harmonizes its provisions." The Tishhouses' subsequent conclusory argument refers to no law or fact to support its contention that its favored interpretation is

somehow more harmonious.[1] Interpretation of the Parties' Acquisition Agreement simply does not require such strained "harmonizing."

Finally, the Tishhouses' references to the "granular" nature of the alleged terms of the future employment agreement is not relevant. The argument, presumably, is that all necessary terms for the employment agreement are contained in the Term Sheet. However, this does not alter the fact that the parties agreement merely provided for the possibility of a future employment agreement.

Based on the foregoing, the Court should enter Summary Judgment in favor of Martell, determining that the parties were not subject to any employment agreements.

### III. The Tishhouses' Motion for Summary Judgement Regarding Shared Revenue Should be Denied Because Questions of Fact Exist Regarding the First Party to Materially Breach the Acquisition Agreement.

In its Summary Judgment Motion, Martell further demonstrated that the Parties' Acquisition Agreement provided for the sharing of revenue only in connection with work that was under contract at the time the Acquisition Agreement was entered into.

Martell acknowledges that certain shared revenue payments have not been paid to the Tishhouses.[2] However, where, as here, both parties seek recovery for a material breach of contract, Indiana law provides that the party committing the first material breach is precluded from enforcing the contract. *Five Star Roofing Systems, Inc. v. Armored Guard Window & Door Group, Inc.*, 191 N.E.3d 224, 237 (Ind. Ct. App. 2022). This issue presents a question of fact,

---

[1] The Tishhouses' brief, in support of this section, includes a footnote which merely reads "Find case law on recitals."

[2] In support of their Motion, the Tishhouses note that the Parties dispute whether certain profit associated with a job referred to as Pinehurst is subject to the Acquisition Agreement's profit-sharing provisions. For reasons set forth in Martell's Motion for Summary Judgment, it is not, and the Tishhouses' brief presents no argument to the contrary.

addressing, among others disputed issues, the existence of a breach, as well as the timing and materiality of the parties' breach. *Watson Water Company, Inc. v. Indiana-American Water Company, Inc.*, 85 N.E.3d 840, 849 (Ind. Ct. App. 2017).

As such, for the reasons set forth below, the Tishhouses are not entitled to summary judgment on Counts I, III, and IV of Martell's Amended Complaint. Based upon Martell's contention that the Tishhouses breached first and, until the resolution of the Parties' claims is final and any setoffs are accounted for, it is premature for the Court to determine what, if any, amount will be due to the Tishhouses. Accordingly, the Court should deny the Tishhouses' motion with regard to their claim for shared revenue.

## IV. The Tishouses are Not Entitled to Relief Under Fed. R. Civ. P. 12(c).

### a. The Court should Exclude all Matters Presented Outside of the Pleadings and Deny Tishhouses' Rule 12(c) Motion.

In their Motion, the Tishhouses expressly seek the dismissal of Martell's claims pursuant to Fed. R. Civ. P. 12(c). As previously noted, this is inconsistent with the Court's local rules. Moreover, in support of their 12(c) Motion, the Tishhouses make repeated refence to matters outside of the pleadings, inconsistent with the requirements of Fed. R. Civ. P. 12(c).

Pursuant to this rule, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Thus, the court "may (1) 'convert the 12[(c)] motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule,' or (2) 'exclude the documents attached to the motion [for judgment on the pleadings] and continue under Rule 12.'" *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

In support of nearly every argument set forth pursuant to Fed. R. Civ. P. 12(c), the Tishhouses have relied heavily and nearly exclusively on matters outside of the pleadings. These matters include the deposition testimony of John Martell, Jennifer Martell, Shane Allen, and Christopher Wilson, as well as the inadmissible evidence addressed below in Section IV(b), including the Declaration of Sera Gesmundo, the letter from an individual named Larry Baumgart and inadmissible portions of the Tishhouses' declarations.

Pursuant to Fed. R. Civ. P. 12, the Court should exclude all of the above-referenced evidence and rule on the motion solely on the basis of the pleadings.

In its First Amended Complaint, Martell asserted claims for Breach of the Acquisition Agreement (Count I), Tortious Interference with Business Relationships (Count II), Tortious Interference with Contractual Relationships (Count III), and Conversion (Count IV).

The First Amended Complaint further set forth numerous allegations in support of each count sufficient to withstand a Motion for Judgment on the Pleadings. Specifically, in addition to alleging the existence of the Parties' Contract, Martell alleged that the Tishhouses failed to remove its website from the internet, continued to purchase supplies in their own name, including among others, materials and equipment from Kendall Electric Supply and Generac, continued to apply for permits as Tishhouse Electric, and actively accounted for work in a manner that artificially inflated their own profits. (Amended Complaint, ¶¶ 10(a), 10(b), 10(c), 11(a)).

Martell further alleged that the Tishhouses encouraged two customers, John Stap and Jonathan Nawrocki, to cancel existing orders with Martell. (Amended Complaint, ¶ 11(c) and 11(d)). In addition, Martell alleged that Stephen Tishhouse contacted Martell employees Ben

Hansen and Adam Beilby, encouraging them to leave Martell to work for a competitor. (Amended Complaint, ¶ 13).

The Tishhouses' motion may be granted only if it appears beyond doubt that Martell cannot prove any facts that would support a claim for relief. *Federated Mutual Insurance Company*, 983 F.3d 307 at 313. In light of the details of the Amended Complaint set forth above, and under the applicable standard, the Court in accepting the allegations in the First Amended Complaint as true and drawing all reasonable inferences in favor of the non-moving party, should deny the Tishhouses' Motion for Judgment on the Pleadings. *See Loud Records LLC v. Minervini*, 621 F.Supp.2d 672 (W.D. Wis. 2009); *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742 (7th Cir. 2017).

> b. *Even If Treated as a Rule 56 Motion For Summary Judgment, the Court Should Still Exclude Certain Evidentiary Matters Submitted by the Tishhouses in Support of their Motion.*

Even treated as a Motion for Summary Judgment, the Court should exclude material submitted by the Tishhouses for the first time with their Motion, including the valuation letter of Larry Baumgart, the Declaration of Sera Gesmundo, and certain portions of two declarations submitted by Stephen and Carrie Tishhouse.

Fed. R. Civ. P. 26(a)(1)(A) requires that fact witnesses, "anyone likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment," must be disclosed by sending the name, address, and phone number of each potential witness to the opposing party. *Musser v. Gentiva Health Services*, 356 F.3d 751, 756 (7th Cir. 2004). If a party fails to make these required disclosures, Fed. R. Civ. P. 37 (c)(1) provides that "a party is barred from using at trial evidence that it failed to disclose 'without substantial justification' … unless that failure was harmless." *Jenkins v. Bartlett* 487

F.3d 482, 488 (7th Cir. 2007)[3]. Here, the Tishhouses have provided evidence in the form of a valuation letter from Larry Baumgart and a sworn statement from Sera Gesmundo, neither of whom were disclosed by the Tishhouses as required by Fed. R. Civ. P. 26. The exclusion of both pieces of evidence is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." (*Id*.)

The Tishhouses have also provided their own Declarations as evidence in support of their Motion. Fed. R. Civ. P. 56(c)(4) prevents statements within a declaration that would not be admissible as evidence from being used to support a motion. If portions of a declaration do not comply with this rule, a Court may strike them. *Norfolk Southern Railway Company v. Global Tower, LLC*, 620 F.Supp.3d 784, 792-93 (N.D. Ind. 2022). The Declarations of both Stephen and Carrie Tishhouse contain multiple statements that would not be admissible as evidence. First, both Declarations rely on the Valuation Letter provided by Larry Baumgart. (*see* Declarations of Stephen and Carrie Tishhouse at ¶ 2). This letter is inadmissible both as hearsay and because Baumgart was never disclosed as a witness. Next, both Declarations state that "John Martell was aware that by entering into the transaction, I would be selling my business and that I would require similar job security for a term of employment given the low cash purchase price of the transaction." (*Id*. at ¶7). These statements are inadmissible because they are not made from the personal knowledge of the Tishhouses.

Based on the foregoing, Martell requests the Court strike the valuation letter of Larry Baumgart, the Declaration of Sera Gesmundo, and paragraphs 2 and 7 of both Tishhouse Declarations.

---

[3] Pursuant to Fed. R. Civ. P. 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

   c. *Even if the Court Treats the Tishhouses' Motion as a Motion for Summary Judgment, the Motion Should be Denied Because Questions of Fact Exist Regarding Each Claim.*

Even if the Court considers the evidence submitted by the Tishhouses, the record shows that the claims asserted by Martell are not subject to summary judgment.

    i. *The Court Should Deny the Tishhouses' Motion as it Regards Martell's Counts for Breach of Contract (Count I) and Conversion (Count IV) Because Questions of Fact Exist with Regard to Each Count.*

Under Indiana law, in order to prove a Breach of Contract, the plaintiff must show: (1) the existence of a contract; (2) the defendant's breach of the contract; and (3) damages resulting from such breach. *Trustees of Indiana University v. Spiegel*, 186 N.E.2d 1151, 1158 (Ind. Ct. App. 2022).

The Tishhouses' argument confuses the claim for breach of contract with the various allegations, evidence, and conduct that supports such a claim. In other words, Martell does not have a "claim regarding shop time" that is subject to being dismissed. Rather, Martell has a claim for breach of the Acquisition Agreement and, in its Amended Complaint, alleged certain conduct in support of that claim. Based on the evidence of record, the Tishhouses' motion, even treated as a summary judgment motion, should be denied as to Counts I and IV of Martell's Complaint.

The Acquisition Agreement includes numerous provisions relevant to Martell's claim for breach of the Agreement. Notably, Section 1.1 makes clear that the Tishhouses were selling "all assets used in the operation of the Tishhouse [Electric]." Section 1.1-8, Covenant Not To Compete, provides that for a period of three years following the closing, the Tishhouses agreed not to compete with the services provided by Martell. Further, Section 2.1-2, provides that, with regard to work in process, Martell would perform the work and Tishhouse would pay to Martell

an amount equal to 110% of Martell's time and materials. The Parties agreed that, following closing, Tishhouse would no longer be in operation. The Parties further agreed that all materials would be ordered by Martell and all labor would be performed by Martell.

Accordingly, these provisions, read as a whole, make clear that the Tishhouses, by virtue of the non-compete agreement, as well as the sale of all of its assets, were obligated to cease operations. Simply stated, the Tishhouses were bound by the non-compete to do no electrical work and, by virtue of the Acquisition Agreement, there would be no resources with which to compete. However, the evidence indicates this is not what occurred.

Despite the Acquisition Agreement's requirement that all material be purchased by Martell, the Tishhouses continued to place hundreds of orders with suppliers that include Kendall Electric and Generac, in their own name, using their prior accounts well after the closing date. Martell Ex. P; Martell Ex. Q. In doing so, to the extent such work was subject to the revenue sharing provisions of Section 2.1-2, such orders had the direct effect of depriving Martell of a 10% markup agreed to and contained in the Acquisition Agreement. As made clear by Martell employee, Ben Hansen, this was the very reason that Stephen Tishhouse continued to place orders in its own name. (Martell Ex. O, ¶ 4).

In addition, the evidence in this matter reveals additional instances in which the Tishhouses continued to operate. For example, Carrie Tishhouse continued to seek permits in Tishhouse's name well after the closing (see Deposition of Carrie Tishhouse at 64). In addition, despite agreeing to remove their web site, the Tishhouses continued to maintain an independent presence on the World Wide Web.[4] Accordingly, the Tishhouses' conduct in failing to shut down

---

[4] The Tishhouses will argue that this was the result of losing a password and being unable to gain access. However, the Tishhouses' explanation as to why the breach occurred does not alter the fact that the breach in fact occurred.

its website, in continuing to place orders in its own name in order to divert that revenue from Martell, and in seeking permits in its own name, in the aggregate constitute a breach of the agreement, and, alternatively, Conversion.

The elements of a claim for Conversion require showing: (1) the wrongful exercise of control over property; (2) in a manner that excludes the owner's rights over the property; (3) and in a manner inconsistent with the owner's claim. *Harkins v. Westmeyer*, 116 N.E.3d 461, 472 (Ind. Ct. App. 2018)("Tortious conversion is appropriating another's personal property for the tortfeasor's own use and benefit, in exclusion and defiance of the owner's rights.")

If the Court were to determine the Tishhouses did not breach the Acquisition Agreement, their conduct, as Martell employees, placing hundreds of orders in the name of their former company, and not Martell, constitutes a wrongful exercise of control over a right of Martell's that deprived Martell of its markup, inflated the Tishhouses' share of project revenue, and was inconsistent with their role as Martell employees. As such, the Court should deny the Tishhouses' Motion for Summary Judgment regarding Martell's Conversion claim.

The Tishhouses further contend that Martell's claims should be dismissed because there have been no damages. The Tishhouses' argument in its Motion confuses the nature of the damages incurred and to be proven at trial with a lack of evidence. In fact, in its 30(b)(6) deposition, Martell testified that it identified $15,000 to $20,000 thousand in misallocated shop time by the Tishhouses (See Martell Ex. N at 71:20-72:13). In addition, the testimony further included the statement that based on historical revenue and Martell's projections, revenue associated with the Tishhouse location was significantly below expectations. Martell's projected revenue for the Tishhouse location was approximately "4 to 6 million and the expectation for a senior service manager [Stephen Tishhouse] is to bring in at least 2 million a year." (*Id.* at 97:14-

24). Martell projected revenue of as much as $700,000.00 in construction revenue and $600,000.00 in service revenue under the direction of the Tishhouses, which was not achieved. (*Id.* at 98:2-5). This information, together with the Tishhouses' clear violations in continuing to order material in its own name, constitute evidence of the damages incurred by Martell.

The Tishhouses' argument to dismiss or enter judgment on these claims because evidence of damages has not been provided is an invitation to this Court to weigh evidence. If the Court treats the Tishhouses' Rule 12(c) motion as a summary judgment motion and considers matters outside the pleadings at all, it is clear that at this stage, the court does not weigh the evidence in the manner suggested by the Tishhouses. *Cox v. Coca-Cola*, 191 F.Supp.3d 909, 916 (S.D. Ind. 2016)("Further, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." )(citing *Payne v. Pauley*, 337 N.E.3d 767, 770 (7th Cir. 2003)(See also *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994)("[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe.").

      ii.  *Questions of Fact Exist Regarding Martell's Claims for Tortious Interference with Contract that Preclude the entry of Summary Judgment.*

The elements of a claim for Tortious Interference with a Contractual Relationship include: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendants' intentional interference with that relationship; and (4), the absence of justification. *Bradley v. Hall*, 720 N.E. 2d 747, 750 (Ind. Ct. App. 1999). In *Bradley*, the court determined that a viable claim for Tortious Interference with a Contractual Relationship was stated without the need to allege illegality. (*Id*).

Further, in *Bradley,* the Indiana Court of Appeals recognized that an at-will employment relationship is treated as a contract for purposes of Tortious Interference with a Contractual Relationship." Our supreme court agreed with Judge Ratliff, reasoning that '[(t)he parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship" (*Id.* at 751)(citing *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind. 1991).

The circumstances at issue in this matter with regard to Martell employees, Ben Hansen and Adam Bielby, are fully on point with *Bradley*. Stephen Tishhouse, with the awareness of Ben Hansen's status as an employee of Martell, sought to interfere with that relationship. Specifically, Stephen Tishhouse approached Hansen and urged him to leave Martell. When Hansen refused, Stephen Tishhouse retaliated against him personally. (Martell Ex. O, ¶ 6)[5]. Hansen also learned that Stephen Tishhouse similarly approached Martell employee, Adam Bielby, who did in fact leave Martell's employment. (Id. ¶ 7).

With regard to Martell customers, Martell employee Chris Wilson testified that Martell had existing contracts with two customers, John Stap and Jonathan Nawrocki. (Martell Ex. M at 25:19, 36:22). Wilson testified that both customers abruptly cancelled their orders with Martell at the same time that Stephen and Carrie Tishhouse were terminated. Wilson specifically stated that for a cancellation to arrive at as late a stage in the work as these occurred led him to believe Stephen Tishhouse had encouraged this. (*Id*. at 27:9-20, 37:18-38:6).

Finally, Ben Hansen testified that Stephen Tishhouse expressly indicated to him that he intended to reach out to customers such as these with whom he had a relationship and urge them

---

[5] The testimony of Ben Hansen is set forth in his affidavit, cited to in Martell's Statement of Additional Material Facts. Mr. Hansen was disclosed as a witness in Martell's Fed. R. Civ. P 26 disclosures.

to leave Martell. (Martell Ex. O at ¶5). Based on the foregoing, the Court should determine questions of fact preclude the entry of summary judgment regarding the claim for Tortious Interference with Contract.

> iii. *Questions of Fact Exist Regarding Martell's Claims for Tortious Interference with a Business Relationship that Preclude the entry of Summary Judgment.*

In *Melton v. Ousley*, 925 N.E.2d 430, 435–36 (Ind. Ct. App. 2010), the court stated that in order to recover for tortious interference with a business relationship, a plaintiff must show: (1) the existence of a valid relationship; (2) defendant's knowledge of the existence of the relationship; (3) defendant's intentional interference with that relationship; (4) the absence of justification; and (6) damages resulting from defendant's wrongful interference with the relationship. (Citing *Baker v. Tremor*, 890 N.E.2d 73, 85 (Ind.Ct.App.2008)). The court further noted that tortious interference with a business relationship requires the additional showing that a defendant acted illegally. (Citing *Government Payment Service, Inc. v. Ace Bail Bonds*, 854 N.E.2d 1205, (Ind.Ct.App.2006).

Under Indiana law, "[s]ufficiently wrongful conduct, such as a breach of fiduciary duty, can satisfy the requirement of independent illegal action." *Meridian Financial Advisors, LTD. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011). Indiana courts do not require that the illegal action must be criminal. *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641-642 (7th Cir. 1999). Further, "there [is] no 'definition or test' for demonstrating the required 'illegal conduct.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 278 (7th Cir. 2016) (quoting *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000)).

The Tishhouses contend that the Amended Complaint lacks any allegation that they engaged in some independent illegal action. However, the Tishhouses misunderstand the law.

Consistent with *Meridian Financial Advisors, LTD*, numerous questions of fact are present regarding the illegality of the Tishhouses interference with employee relationships. As set forth above, the Tishhouses encouragement of Ben Hansen and Adam Bielby to leave Martell to work at a competitor is actionable as Tortious Interference with a Contract. In addition, even under the standard for illegality required to show Tortious Interference with a Business Relationship, questions of fact exist regarding whether the Tishhouses' conduct rises to a sufficient level of illegality. See *Meridian Financial Advisors, LTD*, 763 F.Supp. 2d at 1064 ("sufficiently wrongful conduct, such as breach of fiduciary duty, can satisfy the requirement of independent illegal action.") In this instance, comparable to such a breach of fiduciary duty, at or upon their termination, while subject to a non-compete provision, the Tishhouses actively encouraged Martell employees to leave Martell and work for a competitor. Such conduct fits within the standard for illegality required by Indiana law.

Based on the foregoing, whether treated as a Motion for Judgment on the Pleadings or as a Summary Judgment motion, the Motion must be denied as to all Counts of Martell's Amended Complaint.

Respectfully submitted,

SOPKO, NUSSBAUM, INABNIT & KACZMAREK

By: /s/ Kevin W. Warren
Kevin E. Warren, # 26638-64
Brent E. Inabnit, #17387-71
5th Floor - Plaza Building
210 South Michigan Street
South Bend, Indiana 46601
Telephone: (574) 234-3000
Facsimile: (574) 234-4220
kevinw@sni-law.com
brenti@sni-law.com
Attorneys for Martell Electric, LLC

CERTIFICATE OF SERVICE

     I hereby certify that on June 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Eric Misterovich, Revision Legal, PLLC.

                                            /s/ Kevin E. Warren