UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

MARTELL ELECTRIC, LLC,

        Plaintiff/Counter-Defendant,        Case No. 3:22-cv-00430

v.        Hon. Cristal C. Brisco

STEPHEN TISHHOUSE,        Hon. Michael G. Gotsch, Sr.
CARRIE TISHHOUSE, and
TISHHOUSE ELECTRIC, INC.,

        Defendants/Counter-Plaintiffs.

_____/

**REPLY BRIEF IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' MOTION FOR JUDGEMENT ON THE PLEADINGS AND PARTIAL SUMMARY JUDGMENT**

Defendants Stephen Tishhouse, Carrie Tishhouse, and Tishhouse Electric, Inc., by and through their attorneys, Revision Legal, PLLC, state as follows for their Reply Brief in Support of their Motion for Judgment on the Pleadings and Partial Summary Judgment.

**I.    SUMMARY JUDGMENT IN FAVOR OF THE TISHHOUSES IS PROPER.**

    **A.  Summary Judgement in Favor of the Tishhouses on their Employment Claim is Proper.**

Martell rests its entire argument on the fact there is no provision of the Acquisition Agreement or document attached thereto titled "Employment Agreement," capital E, capital A. This is semantics. Martell's other arguments are just as hollow, and they should be rejected.

        ***1.  Terms of the Tishhouses' employment with Martell are clearly spelled out in the Acquisitions Agreement.***

First, Martell claims the Acquisition Agreement does not constitute an employment agreement. It does. The Term Sheet clearly identifies specific terms of employment for both Steve and Carrie Tishhouse. Martell cites to no law that would require more or alternative terms or documents to create binding employment terms between the parties.

1

Instead, Martell misconstrues the Tishhouses' arguments and misapplies contract interpterion principles. Martell claims the Tishhouses admit that the Acquisition Agreement does not constitute an employment agreement because the Tishhouses note that it refers to negotiating at-will employment in the future. In addition, Martell claims that the Tishhouses' attempt to harmonize the terms of the Acquisition Agreement—an endeavor required under Indiana law, see *Noble Roman's, Inc. v. Hattenhauer Distributing Company*, 307 F. Supp. 3d 907, 918 (S.D. Ind. 2018)—is simply the Tishhouses picking a favorite interpretation.

Both of these arguments are meritless. The Acquisition Agreement does refer to negotiating at-will employment in the future, but that does not render it an unenforceable contract. And the Tishhouses' interpretation of the interplay between the employment terms in the Term Sheet and the at-will language in the Acquisition Agreement explains why: they are meant to be read together. The most basic, reasonable reading of the document is that the Tishhouses would be entitled to two years of employment minimum (as well as other specific terms) consistent with the Term Sheet, and then the parties could discuss at-will employment. This interpretation harmonizes the provisions, giving all terms effect; Martell's interpretation, which renders all the terms in the Term Sheet meaningless, does not.

2. ***Martell's arguments regarding Steve Tishhouse's union membership and deposition testimony are incorrect and irrelevant.***

Second, Martell makes a passing argument regarding Steve Tishhouse's union membership and cites to misleadingly edited portions of his deposition testimony to argue that Steve Tishhouse could not have entered into employment agreements.[1] Not only does the fact Steve worked for Martell render both points implausible, but neither argument is correct or relevant. Steve's union

---

[1] The Tishhouses addressed this claim in their Response to Plaintiff/Counter-Defendant's Motion for Partial Summary Judgment. ECF 47 p. 10-11.

membership had no bearing on whether he could be employed by Martell; indeed, Martell hired him with knowledge of and in compliance with Steve's union membership. Its continued insistence that Steve's union membership somehow means they could not employ him is belied by the facts and their own actions. As to his deposition testimony, Steve simply testified that "I was never going to do that," in reference to accepting non-union benefits over union benefits. ECF 55, Additional SMF at ¶ 57. This is nowhere close to any sort of admission that he was not employed by Martell or that he did not want to or was unable to be employed by Martell.

### B. Summary Judgment in favor of the Tishhouses' Breach of Contract Claim as to shared revenue should be granted.

In its Response, Martell makes a passing argument that because it claims the Tishhouses breached the Acquisition Agreement first, the Tishhouses are not entitled to summary judgment on their claim for shared revenue.[2] Martell cites to Indiana law holding that "the party committing the first material breach is precluded from enforcing the contract." See *Five Star Roofing Systems, Inc. v. Armored Guard Window & Door Group, Inc.*, 191 N.E.3d 224, 237 (Ind. Ct. App. 2022). The entirety of Martell's argument on this point is: "Based upon Martell's contention that the Tishhouses breached first and, until the resolution of the Parties' claims is final and any setoffs are accounted for, it is premature for the Court to determine what, if any, amount will be due to the Tishhouses." Resp, p. 6. Martell does not identify the material breaches it believes were committed by the Tishhouses or when those allegedly material breaches took place.

Under Indiana law, "[a] material breach is often described as one that goes to the 'heart of the contract.'" See *State v. Int'l Bus. Machines Corp.*, 51 N.E.3d 150, 158–59 (Ind. 2016); *KR Enterprises, Inc. v. Zerteck, Inc.*, 461 F. Supp. 3d 825, 837 (N.D. Ind. 2020), aff'd, 999 F.3d 1044

---

[2] Strangely, Martell also claims this same "disputed fact" precludes summary judgment in the Tishhouses' favor on Martell's claims for breach of contract, tortious interference, and conversion, the latter two of which are not claims for breach of contract.

(7th Cir. 2021). Of the breaches alleged by Martell, all are either disproven (e.g., the incorrect depositing of a work order), unsupported by evidence or contradicted by evidence (e.g., that the Tishhouses convinced employees and clients to abandon Martell), or are so innocuous as to be meaningless (e.g., filing an annual report with the State of Michigan). None of the alleged breaches go to the "heart" of the contract, which was an asset purchase of the Tishhouses' company. Martell makes no effort to explain their contention that the Tishhouses materially breached the Acquisition Agreement, and the record before this Court hints at why—they can't.

## II. JUDGMENT ON THE PLEADINGS AS TO MARTELL'S TORTIOUS INTERFERENCE AND PORTIONS OF ITS BREACH OF CONTRACT CLAIM IS PROPER.

The Tishhouses's brief clearly articulated the grounds for dismissal under Fed. R. Civ. P 12(c) and such grounds did not rely on extrinsic evidence. The real error lies in the First Amended Complaint. For example, Section 11 alleges five specific ways in which the Tishhouses allegedly "breached the [Acquisition] Agreement." ECF No. 30. This includes the acceptance of payments and encouraging two customers to cancel orders. *Id*. at ¶11(b)-(d). But Martell seems to believe at least some of these actions support other causes of action. First, the allegation regarding the acceptance of payments is clearly pled to support its Conversion claim. Second, at page 14 of its Response Brief, Martell argues about why the alleged "encouragement" to cancel orders constitutes tortious interference. Martell's First Amended Complaint, which pled zero facts in the actual causes of action, has forced the Tishhouses to fully respond. Finally, to confuse matters even more, Martell now claims that some of the actions within ¶ 11, which are expressly pled as breaches of the Acquisition Agreement, are not independent grounds of a breach at all. See Response at p. 10 (admitting the allegation at ¶11(a) is not an independent breach of the Acquisition Agreement).

      **A.**    **Martell's First Amended Complaint Fails to State a Claim for Tortious Interference as to the Claims Regarding Encouraging Adam Beilby and Ben Hanson to Leave Martell's Employment.**

Martell's claim for tortious interference fails because Martell pled the alleged interference with its employees occurred after Martell (improperly) terminated the Tishhouses' employment. As a result, Martell's sole ground to for the required illegality element, breach of fiduciary duty, fails because no such duty existed post-employment termination.

Martell argues it does not need to plead illegality by relying on *Bradley v Hall*, 712 N.E.2d. 747, 750 (Ind. Ct. App. 1999). But *Bradley* only applied in a narrow circumstance: "a claim for tortious interference with an employment relationship can be maintained upon a contract terminable at will." Martell is not bringing any-*Brady* like claim. *Brady* is distinguishable. Martell has no other authority to claim the illegality element is somehow waived.

Martell finally addresses the illegality issue at page 15 of its Response. Martell concludes that "numerous questions of fact are present regarding the illegality of the Tishhouses interference with employee relationships." Response at 16. Then, in completely circular fashion, Martell concludes "the Tishhouses encouragement of Ben Hansen and Adam Bielby to leave Martell to work at a competitor is actionable as Tortious Interference with Contract." *Id*. Martell finally makes an actual argument about illegality by claiming that the Tishhouses breached a fiduciary duty by encouraging Martell employees to work for a competitor. *Meridian Financial Advisors, LTD v Pence*, 763 F.Supp.2d 1046, 1064 (S.D. Ind. 2011).

Martell's First Amended Complaint failed to sufficiently allege the existence of a fiduciary duty between Stephen Tishhouse and Martell. To state a claim for breach of a fiduciary duty, Martell must plead the existence of a fiduciary duty, a breach of the duty, and damages. *Franciscan Alliance, Inc. v. Padgett*, 180 N.E.3d 944, 952 (Ind.App., 2021) (citations omitted). Martell did

not allege the existence of such a duty, and one did not exist after the Tishhouses were terminated, which is when the illegal activity allegedly occurred. While employees owe their employer a duty of loyalty, that extends only while employed. *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 768 (Ind.App. 2011) ("*Prior to his termination*, an employee must refrain from actively and directly competing with his employer for customers and employees and must continue to exert his best efforts on behalf of his employer.") (emphasis added) (citations omitted). According to Martell's First Amended Complaint, Stephen Tishhouses' alleged contact with Adam Beilby and Ben Hanson occurred "subsequent" to Martell terminating Stephen Tishhouses' employment. ECF No. 30 at ¶¶ 12-13.

The Acquisition Agreement does not save Martell. the non-compete provision cannot serve as the basis for a tort claim. *Smith v. Biomet, Inc.*, 384 F. Supp. 2d 1241, 1252 (N.D. Ind. 2005) (citations omitted).

### B. Martell's First Amended Complaint Fails to State a Claim for Tortious Interference as to any of the Alleged Acts in Paragraph 11 of the First Amended Complaint.

Martell argues the allegations of encouraging two customers to cancel their orders constitutes both a breach of the Acquisition Agreement and their tortious interference claims. ECF 30 at ¶ 11(c)-(d) (stating these actions were a breach of the Agreement); Response Brief at p. 14 (stating these actions constitute tortious interference). These allegations cannot support a claim for tortious interference because these sound in contract. And a breach of contract cannot support the required "illegality" element. *Smith*, 384 F. Supp. 2d at 1252. It is not entirely clear if Martell believes the actions plead at ¶ 11(a), (b), and (e) of its First Amended Complaint also constitute tortious interfere. To be clear, they do not. Martell characterizes these actions as breaches of the Acquisition Agreement. The Court should treat them as such and clarify the record that these

6

allegations do not state a claim for tortious interference because a breach of contract cannot support the required the "illegality" element. *Smith*, 384 F. Supp. 2d at 1252.

### C. Martell Admits the Misapplication of Job Time is Not Independent Grounds for Breach of Contract.

In its First Amended Complaint, Martell specifically alleged that the Tishhouses breached the Acquisition Agreement by misapplying job time. ECF 30 at ¶ 11(a). But it its Response, Martell changes its position. Now, Martell argues that at least some of these actions are *not* separate breaches. Martell states that it "does not have a 'claim regarding shop time' that is subject to being dismissed. Rather, Martell has a claim for breach of the Acquisition Agreement, and in the Amended Complaint, alleged certain conduct in support of that claim." Response at p. 10.

Either the misapplication of shop time breached the Acquisition Agreement or it did not. Given that there is no specific contractual provision as to how Martell employees are to apply shop time versus job time, it cannot form the basis for a claim for breach of contract. And given that Martell has admitted as much, the Court should narrow the issues for trial and enter an order that the misapplication of job time/shop time is not a separate ground for a breach of contract.

## III. SUMMARY JUDGMENT AS TO MARTELL'S CLAIMS IS PROPER.

### A. Summary Judgment is Proper as to Martell's Tortious Interference Claims Regarding Encouraging Ben Hanson to Leave Martell's Employment.

Martell clings to a declaration of Ben Hansen in an attempt to create a factual dispute. It fails. Hansen's eleventh-hour declaration plainly contradicts Martell's corporate deposition testimony. At its 30(b)(6) deposition, Martell was asked "What is the evidence that Steve encouraged Ben to leave the employment of Martell?" Martell answered "Ben communicated that to Chris Wilson." ECF 48-13, Jennifer Martell Deposition, p.93:9-11. But Chris Wilson testified

7

in a completely contradictory manner, indicating that Ben never told him that Steve ever encouraged him to leave Martell:

> Q: "Have you ever had a conversation with Ben about Ben potentially leaving Martell?"
> A: No.
> Q: "Just to be clear, that means you don't have any conversations with Ben where Ben told you that Steve was encouraging him to leave Martell's employment, correct?"
> A: "No. That is correct." Wilson Deposition, p.42:21-43:3. ECF No. 48-17, p.42:21-43:3.

"It is well settled that an opponent to summary judgment may not create a genuine issue of material fact simply by submitting an affidavit which directly contradicts prior, sworn deposition testimony." *Bunger v. Brooks*, 12 N.E.3d 275, 279 (Ind. App., 2014) (citations omitted). "It has long been the law in Indiana and many other jurisdictions that 'contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant.'" *Crawfordsville Square, LLC. v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 939 (Ind. App. 2009) (citations omitted). If "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (citations omitted). "Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Id.* (citations omitted).

Martell's corporate testimony unquestionably indicated that its evidence to support this claim came from Ben Hansen's statements to Chris Wilson. Chris Wilson unequivocally contradicted that deposition testimony. Now, in response to a Motion for Summary Judgement,

Mr. Hansen's declaration contradicts Martell's corporate testimony and should be disregarded. *Bunger*, 12 N.E.3d at 279; *Crawfordsville Square, LLC.*, 906 N.E.2d at 939. The Tishhouses move to strike the Hansen declaration.

A second reason warrants dismissal: there are no facts to support the illegality element required for a claim for tortious interference. Martell's only position on this element is that Stephen Tishhouse owed, and breached, a fiduciary duty by encouraging Hansen to leave Martell's employment. However, Hansen's own sham declaration states that this alleged "encouragement" occurred "on or around the period of time when Stephen Tishhouse's employment was terminated." In other words, any fiduciary duty once owed as an employee was extinguished, and was no more, as of Stephen's termination of employment with Martell. See *supra* Section II.A; *SJS Refractory Co., LLC*, 952 N.E.2d at 768. Finally, this claim also fails because cognizable damages are a required element. Ben Hansen continues to be employed by Martell. There are therefore no damages, and this claim must be dismissed. See *Miller v. Central Indiana Community Foundation, Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014).

**B.    Summary Judgment is Proper as to Martell's Tortious Interference Regarding Encouraging Adam Bielby to Leave Martell's Employment.**

Similar to Hansen, Martell testified its evidence related to this claim came from statements made by Biebly to Chris Wilson. But Chris Wilson testified that statement never happened. ECF 48 at SMF at ¶26(b). And so did Biebly himself. ECF 48 at SMF at ¶26(d). Martell now relies on Hansen's sham declaration that contradicts Martell's deposition testimony, and it should be disregarded for the same reasons as stated above. Second, Hansen's statement within his declaration on this point should also be disregarded as inadmissible hearsay. Hansen stated, "At this time, Adam Bielby…told me that Stephen Tishhouse indicated to Bielby that he was likely to be fired by Martell. Bielby explained to me that this was why he decided to leave Martell and take

9

a job with one of Martell's competitors." This statement, of what Stephen told to Adam and then what Adam told to Ben, is being offered for the truth of the matter asserted and to attempt to create a factual dispute. It is inadmissible hearsay (and hearsay within hearsay) pursuant to Fed. R. Evid. 801(c) and may not be considered pursuant to Fed. R. Civ. P. 56(c)(4).

> C. **Summary Judgment is Proper as to Martell's Tortious Interference and/or Breach of Contract Claims Regarding the Cancelled Orders.**

In its motion for summary judgment, the Tishhouses moved to dismiss Martell's claims based upon cancelled orders, whether those claims sounded in tortious interference or breach of contract. Martell's only responsive argument is that the orders were cancelled around the time Stephen's employment was terminated and that Chris Wilson "believed" Stephen Tishhouse encouraged the two customers to cancel their orders. This belief does not create an issue of fact as "statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact." *Hundt v. DirectSat uSA, LLC,* 294 F.R.D. 101, 109 (N.D. Ill. 2013) (citing *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994). Mr. Wilson also testified that, contrary to what Martell alleged in its First Amended Complaint, he never heard anyone indicate that Stephen Tishhouse encouraged either customer to cancel the orders. ECF 48, SMF at ¶¶22(d) and 24(c). Martell has failed to carry its burden to present admissible evidence to create a genuine issue of material fact.

> D. **Summary Judgment is Proper as to Martell's Conversion Claim.**

Martell has conceded that its allegation at ¶ 11(b) of the First Amended Complaint is false. ECF 57 at ¶ 29. Facing this reality, and instead of volunteering to dismiss this claim, Martell doubles down with a theory of conversion that is entirely unsupported by law. Martell now argues its conversion claim is a form of alternative relief in the event its breach of contract claim is dismissed. At page 12 of its Response, Martell argues:

> If the Court were to determine the Tishhouses did not breach the Acquisition Agreement, their conduct, as Martell employees, placing hundreds of orders in the name of their former company, and not Martell, constitutes a wrongful exercise of control over a right of Martell's that deprived Martell of its markup, inflated the Tishhouses' share of project revenue, and was inconsistent with their role as Martell employees. As such, the Court should deny the Tishhouses' Motion for Summary Judgment regarding Martell's Conversion claim.

Martell fails to cite any case law to support the theory that control over Martell's "right" to its markup on expenses constitutes an actionable claim for conversion. None exists. At most, this is a claim for a debt, which is not grounds for a claim of conversion. *Bowden v. Agnew*, 2 N.E.3d 743, 750 (Ind. App. 2014) ("It is well established that refusal to pay a debt will not generally support a conversion claim.") Martell's conversion claim should be dismissed. Fed. R. Civ. P. 56.

### E.  Summary Judgment is Proper as to Martell's Breach of Contract Claim.

Martell repeats three misunderstandings throughout is Response. First, Martell repeatedly argues that the Tishhouses were required to cease operations. But there is no contractual provision that says that. ECF 48, SMF at ¶ 39. Second, Martell repeatedly claims that the Tishhouses were not permitted to order materials and that it must have been done in Martell'a name. Again, there is no contractual provision that says that. ECF 10-1. Third, Martell repeatedly refers to the non-compete provision being triggered by the Tishhouses ordering materials. But Martell has not presented any evidence whatsoever that the Tishhouses "competed" with Martell. SMF at ¶ 40.

Moreover, as to all issues related to Martell's claim for breach of contract other than the markup on the purchased materials (addressed below), Martell has offered no evidence of damages whatsoever. Martell has no evidence showing that operation of the Tishhouse website, applying for permits, obtaining quotes, or filing an annual report with the State of Michigan resulted in any damages whatsoever.  SMF at ¶ 32-33, 36, 39-41. This is not asking the court to weigh evidence.

The existence of damages is a necessary element of a breach of contract claim. See *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021) ("The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages.")

Martell points to two specific measures of damages. First, Martell relies on its the deposition testimony identifying $15,000-$20,000 in misapplied shop time. This is nothing more than an unsubstantiated conclusory statement. Rule 56 mandates more than conclusory allegations to create a genuine issue of material fact. *Reddy v. Buttar*, 38 F.4th 393, 403 (4th. Cir. 2022) (citations omitted). "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th. Cir. 2013) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Martell admitted it possessed documents to support that claim, but it has never produced any documents on this issue. ECF 57 at ¶¶31(g), (h). Martell cannot create a genuine issue of material fact, at this point in the case, by simply stating it suffered damages when it has refused to produce the documents it admits exist and discovery is now closed.

Second, Martell's claim that it suffered damages from "projected revenue" warrants Rule 11 scrutiny. This claim is plainly contradicted by its own deposition testimony.[3] Further, there is no good faith argument to make that the Tishhouses are somehow liable for failing to satisfy revenue targets. No such targets existed in total, yet alone in a binding agreement. Martell specifically testified that: 1) it does not set specific income goals for employees and 2) it never set any form of metrics, quotas, or performance triggers with Stephen Tishhouse:

> Q: "Other than those kinds of general discussions about his role, you did not have any specific conversations about specific employment metrics, goals, quotas, regarding his continued employment at Martell, correct?"

---

[3] This computation of damages is also absent from its Initial Disclosures. **Exhibit 31**.

    A: "We talked about the position of senior service manager, that is pretty standard in the industry. And no, I didn't put together quotas and whatever else you referenced. But the term senior service manager is pretty standard in the industry and was indicative of what he was currently doing. **In our mind we had what we thought he should be able to do, but for the most part when you tell somebody in a role like that that they have to do $2 million in business, they tend to melt and say it's impossible. So we don't – we try to work with people to bring them up to that level without putting those expectations in front of them**.

    Q: "Okay. But you did not have a discussion about additional metrics, triggers, quotas –"
    A: **"No."**

    Q: "-- other expectations in connection with his employment at Martell, correct?
    A: **"Correct."**

ECF 48-7, John Martell Corp. Deposition, p.44:10-45:17 (emphasis added).

    Finally, Martell points to documents obtained from Kendall and Generac to show that the Tishhouses were ordering products in the Tishhouse name such that Martell was not able to receive its 10% markup. There are several problems with this argument. First—and it bears repeating—the Acquisition Agreement does not specifically state what entity must order the materials and does not require the Tishhouse entity to terminate. Second, all these documents were received well *after* the close of discovery, a direct result from Martell's decision to issue the subpoenas only one week before the close of discovery.[4] Reply SMF at ¶¶ 49-50. "Rule 45 subpoenas . . . are subject to the same time constraints that apply to all of the other methods of formal discovery," *Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 123 (N.D. Ind. 2001), and requests for documents must be served at least 30 days prior to the discovery deadline in order to allow for production within the discovery period. See *Shadle v. First Financial Bank*, N.A, 2009 WL 3787006, *1 (N.D. Ind. Nov. 10, 2009). Indeed, a "party should [not] be allowed to employ a subpoena after a discovery deadline to obtain materials from a third party that could have been produced in discovery." *Dreyer*, 204 F.R.D. at

---

[4] The initial scheduling order, ECF No. 28, made clear the "last month of discovery [is for] the purpose of concluding your work, not extending it."

13

123. That is precisely what Martell did here, and they now seek to overcome summary judgment using documents obtained outside the discovery period where the Tishhouses have no ability to investigate or challenge them. The Tishhouses request the Court strike and not consider Exhibits P, Q, and R. See *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 603–04 (7th Cir. 2024) (excluding various documents from consideration where "the documents were turned over long after discovery closed, [and the Defendant] also had not had an opportunity to contest the evidence, leading to prejudice"); *Black v. Youngue*, No. CIV.A. 14-505, 2014 WL 7335030, at *4 (W.D. Pa. Dec. 19, 2014) ("Additionally, the Court finds it completely unreasonable for a party to acquire documents after discovery has closed, without permission from the Court, without notice to the other side, and just 13 days from the summary judgment deadline, with intent to use that material in its motion for summary judgment and/or trial . . . ").

Finally, any claim that the Tishhouses acted improperly as to the Generac invoices is baseless. Martell themselves instructed the Tishhouses to order these products in the Tishhouse name. Reply SMF at ¶ 50.

## IV. MARTELL'S ANCILLARY ARGUMENTS ARE MERITLESS

Martell's accusation that filing a combined Motion for Judgment on the Pleadings and Motion for Summary Judgment violates Local Rule 7-1(a) is incorrect. The combined motion sought alternative relief in the event the Court finds the Complaint adequately stated claims pursuant to Fed. R. Civ. P. 12(c). And the title of the motion was accurately named.

Second, the claim that Larry Baumgart was not disclosed is inaccurate. On October 2, 2023, Tishhouse counsel emailed an Expert Witness Designation and Disclosure pursuant to Fed. R. Civ. P. 26(a)(2), along with a copy of the valuation letter. Reply SMF at ¶ 42.

Third, the claim that Sera Gesmundo, the President of Hawks Hollow Builders, was not disclosed is factually inaccurate. Martell's own Rule 26 disclosures lists "representatives of…John Stap" as individuals that may have discoverable information used to support Martell's claims and defenses. **Exhibit 31**. Second, Martell agreed Hawks Hollow was the builder on the Stap project. ECF No. 57 at ¶ 22(a). Third, Martell produced the invoice for the John Stap project, which expressly states it was delivered to "Hawks Hollow Builders" and sent via email to sera@hawkshollow.com. Martell was well aware, or should have been aware, of Sera Gesmundo or representatives of John Stap. **Exhibit 15**.

## CONCLUSION

For the reasons stated herein, Defendants/Counter-Plaintiffs respectfully request this Honorable Court **GRANT** their Motion for Judgment on the Pleadings and Partial Summary Judgment and grant any other relief the Court deems appropriate.

Respectfully submitted,

Date: June 25, 2024    REVISION LEGAL, PLLC

/s/Eric Misterovich
Eric Misterovich
Revision Legal, PLLC
eric@revisionlegal.com

*Attorneys for Defendants/Counter-Plaintiff*

15

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date below, the foregoing Reply Brief in Support was served on counsel of record via the Court's ECF system.

                                            Respectfully submitted,

Date: June 25, 2024                         REVISION LEGAL, PLLC

                                            /s/Eric Misterovich
                                            Eric Misterovich
                                            *Attorneys for Defendants*
                                            Revision Legal, PLLC
                                            8051 Moorsbridge Rd.
                                            Portage, MI 49024
                                            269-281-3908
                                            eric@revisionlegal.com

                                            *Attorneys for Defendants/Counter-Plaintiff*