UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

MARTELL ELECTRIC, LLC,

      Plaintiff/Counter-Defendant,    Case No. 3:22-cv-00430

v.    Hon. Cristal C. Brisco

STEPHEN TISHHOUSE,    Hon. Michael G. Gotsch, Sr.
CARRIE TISHHOUSE, and
TISHHOUSE ELECTRIC, INC.,

      Defendants/Counter-Plaintiffs.
_____/

| | |
|---|---|
| SOPKO, NUSSBAUM, INABNIT & KACZMAREK<br>Brent E. Inabnit (#17387-71)<br>Kevin E. Warren (#26638-64)<br>Jessica R. Merino (#31759-17)<br>5th Floor – Plaza Building<br>210 South Michigan Street<br>South Bend, IN 46601<br>(574) 234-3000<br>brenti@sni-law.com<br>kevinw@sni-law.com<br>jessicam@sni-law.com<br><br>*Attorneys for Plaintiff/Counter-Defendants* | REVISION LEGAL, PLLC<br>Eric W. Misterovich (P73422)<br>8051 Moorsbridge Rd.<br>Portage, MI 49024<br>(269) 281-3908<br>eric@revisionlegal.com<br><br>*Attorneys for Defendants/Counter-Plaintiff* |

_____/

**OBJECTION TO PLAINTIFF/COUNTER-DEFENDANTS' MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANTS/COUNTER-PLAINTIFFS' MOTION TO STRIKE**

      Defendants Stephen Tishhouse, Carrie Tishhouse, and Tishhouse Electric, Inc. (the "Tishhouses"), by and through their attorneys, Revision Legal, PLLC, state as follows for their Objection to Plaintiff/Counter-Defendants' Motion for Leave to File Response to Defendants/Counter-Plaintiffs' Motion to Strike.

INTRODUCTION

Pursuant to Local Rule 56-1(f), disputes about evidence are to be raised in the parties briefs, not through a separate motion. The Tishhouses asked this court to ignore an affidavit that Martell attached to its response to the Tishhouses' Motion for Summary Judgment and records that Martell requested from third parties via subpoenas issued one week before discovery closed. The affidavit was not produced in discovery, and it contradicts sworn testimony that was; the third-party records were received well after discovery closed and soon before dispositive motions were due. The first time the Tishhouses saw the affidavit was when they read Martell's response. They objected to consideration of the affidavit and the third-party records in their reply brief, as required by this Court's local rules.

Martell's present request to defend their eleventh-hour inclusion of a sham affidavit and third-party records is as meritless as the claims those documents purport to support. The admissible testimony obtained under oath during discovery forecloses their claims for tortious interference, the Acquisition Agreement entered into by the parties did not preclude the Tishhouses from using their name to order materials, and Martell themselves told the Tishhouses to order materials under their name, at least from one of those third-party suppliers. This Court should deny Martell's request to expound upon the appropriateness of its sham affidavit and third-party records obtained after the close of discovery.

FACTS AND PROCEDURAL POSTURE

In its First Amended Complaint, Martell brought claims for, among other things, tortious interference based on its allegations that the Tishhouses told Ben Hanson and Adam Bielby to quit working for Martell. ECF No. 30 at ¶¶ 13-14. Martell also brought claims for breach of contract

based on its allegations that the Tishhouses ordered materials under their name which, according to Martell, violated the asset purchase agreements signed by the parties. ECF No. 30 at ¶ 10.

During discovery, the Tishhouses investigated and tested those claims. Martell never produced any documents related to the above factual allegations regarding the Tishhouses alleged statements encouraging employees to quit working for Martell. The only record evidence related to those claims comes from deposition testimony of various Martell employees and corporate representatives. The substance of that testimony is discussed at length in the Tishhouses Motion for Summary Judgment, both in their primary brief and reply brief. ECF Nos. 47, 60. In short, Martell testified that the only evidence it had to support its allegations that the Tishhouses encouraged Ben Hansen and Adam Biebly to quit working for Martell was Martell employee Chris Wilson hearing those two employees make those allegations. ECF 48, SMF ¶¶ 26(a) and 27(a). The Tishhouses deposed Chris Wilson, who testified that Biebly and Hansen did not make such statements. ECF 48, SMF ¶¶ 26(b) and 27(b). Moreover, Biebly expressly denied this allegation against the Tishhouses, ECF 48, SMF at ¶ 26(d), and Stephen Tishhouse testified that he never encouraged either employee to quit. ECF 48, SMF ¶¶ 26(c); 27(c).

As to Martell's claims regarding the Tishhouses ordering materials in their own name, the only evidence Martell filed in support was produced after the close of discovery. Martell obtained third-party records after the discovery period via subpoenas it issued one week before discovery closed, and the Ben Hansen affidavit that was not produced during discovery refers to this claim as well. ECF 58, at ¶ 11. The third-party documents consist of purchase orders from Kendall Electric and Generac, suppliers to Martell. ECF 57.

Given the lack of any evidence supporting Martell's claims for tortious interreference premised on Stephen Tishhouses' alleged statements to Martell employees, the Tishhouses moved

2

to dismiss those claims in their Partial Motion for Summary Judgement and Motion for Judgement on the Pleadings. ECF 47. They also moved to dismiss Martell's claims regarding ordering materials in the Tishhouse name for several reasons, but primarily because the plain language of the Acquisition Agreement did not prohibit that practice. ECF 47.

In response, Martell submitted an affidavit from Ben Hansen, an employee of Martell, purporting to create a genuine issue of material fact regarding Martell's claims that Stephen Tishhouse encouraged Martell employees to quit. ECF 57-4. In the affidavit, among other alleged statements, Hansen claims that Bielby told him that he quit working for Martell because Stephen Tishhouse allegedly told him Martell was going to fire him. *Id.* Martell also submitted the documents that it received from Kendall Electric and Generac, arguing that those documents evidenced the Tishhouses breach of the Acquisition Agreement. ECF 57-5; 57-6.

In their reply brief in support of their Motion for Summary Judgment, the Tishhouses asked this Court to ignore Hansen's affidavit and the records received from Kendall Electric and Generac. ECF 60. The Tishhouses noted that the affidavit—which was not produced, nor were the contents disclosed, in discovery—contradicted sworn deposition testimony from Martell that the only evidence it had regarding its tortious interference claims premised on Stephen Tishhouse allegedly encouraging Martell employees to quit was Chris Wilson's statements, which were denied by Chris Wilson himself when he was deposed. ECF 60. The Tishhouses also cited caselaw that instructs courts to disregard evidence obtained after discovery has closed given the patent unfairness to the other party. ECF 60.

Now, Martell asks this Court to allow it to file another response brief regarding the Hansen affidavit and the records from Kendall Electric and Generac. The Tishhouses object to this request.

3

ARGUMENT

**I.   This Court should deny Martell leave to file a response to the Tishhouses' requests for this Court to ignore Martell's late proffered affidavit and late gathered third-party evidence where Martell attached those documents to its response brief and had every opportunity to argue for their consideration therein.**

First, setting aside the substance of the affidavit and the third-party records, this Court should deny Martell's request for leave because it had a chance to argue for the consideration of those documents when it attached them to its response brief. This Court's local rules, like most if not all similar court rules, do not allow for sur-reply briefs as a matter of course. N.D. Ind. L.R. 56-1(d).[1] Nor do the Federal Rules of Civil Procedure allow for the filing of sur-replies. "As many courts have noted, sur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (cleaned up). Federal courts generally only allow sur-replies in "rare" or "extraordinary circumstances" and only upon a showing of good cause. See, e.g., *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D. Kan. 1999); see also S.D. Ill. L.R. 7.1(c) ("Reply briefs are not favored and should be filed only in exceptional circumstances. The party filing the reply brief shall state the exceptional circumstances. Under no circumstances will sur-reply briefs be accepted.") This reluctance to allow sur-replies serves the interest of judicial economy and finality. *Cotracom*, 189 F.R.D. at 659.

Where Martell sought to admit evidence that it had not obtained or produced during discovery, it had the obligation to establish why that evidence was ripe for consideration at the

---

[1] Martell titles its filing as a motion for leave to file a response to the Tishhouse's "Motion to Strike." The Tishhouses did not file a motion to strike. Martell's request is functionally a request to file a sur-reply brief.

4

summary judgement stage. It failed to do so. The Tishhouses did not raise a new issue in attacking the credibility and admissibility of the documents, Martell raised the issue when it used those documents to support its position, and the Tishhouses responded to that issue accordingly. See *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005) ("When the nonmovant raises new issues or arguments in response to a summary judgment motion, the movant is entitled to respond to those new issues in its reply brief.").

Moreover, Martell's only argument as to why it should be allowed to file a sur-reply—because the Tishhouses did not challenge its evidence until its reply brief—is unavailing: the Tishhouses reply brief was its only opportunity to challenge the evidence that was first proffered in Martell's response brief, especially given they had never seen the affidavit and where the third-party documents were presumptively inadmissible given their production outside of the discovery period. See *infra* Section III. Indeed, this Court's local rules do not allow for a filing of a motion to strike, instead requiring parties to make evidentiary challenges in their briefs. N.D. Ind. L.R. 56-1(f). The Tishhouses adhered to this Court's rules and standard procedures—not to mention this case's scheduling order and discovery period—and Martell did not; it should not now be given the chance to argue for the inclusion of the late coming evidence ginned up between the close of discovery and the filing of dispositive motions.

II. **This Court should deny Martell leave to file a response to the Tishhouses' request for this Court to ignore Martell's late proffered affidavit where it is a sham affidavit and disregarding it is proper.**

The Tishhouses' objection to Martell's request for leave is all the more reasonable when considered against the purposes for which Martell seeks to use its late coming evidence. First, Martell's claims for tortious interference are dead in the water, either due to insufficient pleading or based on the record evidence gathered in discovery. The Hansen affidavit is a sham affidavit—

that relies, in part, on inadmissible hearsay—that contradicts sworn testimony and was only created post-discovery to breathe life into a dead claim. The caselaw is crystal clear that such tactics are beyond the pale, and it instructs this Court to ignore such evidence.

At its deposition, Martell's corporate representative testified that the *only* evidence it had to support its claims that Stephen Tishhouse encouraged two Martell employees to quit was that Chris Wilson heard those employees tell him that. ECF 48, SMF ¶¶ 26(a) and 27(a). Chris Wilson testified that neither employee told him Stephen Tishhouse encouraged them to quit. ECF 48, SMF ¶¶ 26(b) and 27(b). Stephen Tishhouse testified that he never encouraged Martell employees to quit. ECF 48, SMF ¶¶ 26(c); 27(c). One of the employees, Adam Bielby, himself denies that Stephen Tishhouse encouraged him to quit. ECF 48, SMF at ¶ 26(d). At the close of discovery, these were the facts, and they remain the record facts of this case.

With no evidence to support its tortious interference claim based on Stephen Tishhouse allegedly convincing Martell employees to quit, Martell produced a sham affidavit from an employee claiming that Stephen Tishhouse encouraged him to quit despite Martell having previously testified that the only evidence it had related to its claim was Chris Wilson's statements. The affidavit also relies on a hearsay statement[2] that Adam Bielby told Hansen Stephen Tishhouse convinced him to quit, despite Bielby himself denying it. Hansen's affidavit thus directly contradicts Martell's statements regarding the evidence they were aware of to support their claim and the direct statements from Bielby. It is a sham affidavit, and it cannot be considered. See *Bunger v. Brooks*, 12 N.E.3d 275, 279 (Ind. App., 2014) ("It is well settled that an opponent to

---

[2] Martell's arguments that this statement is not hearsay is incorrect. Even if the statement by Stephen Tishhouse to Bielby is not hearsay as a statement made by a party opponent, the statement made by Bielby to Hansen is hearsay insofar as it is being offered for the truth of the matter asserted and it may not be considered. Fed. R. Evid. 801(c); 56(c)(4). And in this case, Bielby directly contradicts the matter asserted. ECF 48, SMF at ¶ 26(d).

6

summary judgment may not create a genuine issue of material fact simply by submitting an affidavit which directly contradicts prior, sworn deposition testimony."); *Crawfordsville Square, LLC. v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 939 (Ind. App. 2009) ("It has long been the law in Indiana and many other jurisdictions that 'contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant . . . [if] a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (citations omitted)).

In its proposed support brief attach to its Motion for Leave, Martell's arguments regarding why its affidavit is not a sham are unavailing. First, Martell claims its corporate representative testified that "the conduct attributed to Stephen Tishhouse" happened, and that the Hansen affidavit is "consistent with that statement." ECF 63-1, at p. 3. Martell does not cite to any record evidence or deposition testimony. As explained above, Martell's corporate designee testified only that Chris Wilson was told about Stephen Tishhouse's alleged efforts to get Martell employees to quit; Chris Wilson testified that did not happen. The contradictory statement at issue is Martell's testimony that only Chris Wilson was told about Stephen Tishhouse's alleged statements followed by Martell producing an affidavit, from one of their own employees, seemingly providing more evidence to support Martell's claim. It does not matter, as Martell implies, that Hansen was listed as a witness; if anything, that further proves the point that Martell knew about his relevance and purported testimony and failed to disclose, or purposefully hid, that fact during its deposition.

Finally, the affidavit—which is clearly a last-ditch attempt to manufacture a fact question out of a record devoid of any supporting facts—does not alter the overwhelming evidence against

7

Martell's claims regarding Stephen Tishhouse allegedly encouraging Martell employees to quit. Martell says Chris Wilson knew about it; he did not. Bielby himself denies being encouraged by Stephen Tishhouse to quit, and Stephen Tishhouse testified that he never encouraged anyone to quit. Martell's claims regarding this alleged tortious interference are, and always have been, flimsy. Even if this affidavit were to be considered, it would not change the overwhelming record evidence exposing the claims as meritless. See *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986))).

**III.   This Court should deny Martell leave to file a response to the Tishhouses' request for this Court to ignore Martell's late gathered third-party evidence where the subject documents are not properly considered on summary judgment and do not materially alter the summary judgment analysis.**

Second, Martell's claim for breach of the Acquisition Agreement based on the Tishhouses' ordering supplies in their name is similarly weak, and the evidence it asks this Court to consider is equally improper. As noted in the Tishhouse's reply brief, the Kendall Electric and Generac records were all requested one week before discovery closed and received after discovery ended; they should not be considered at the summary judgment phase given the unfairness to the Tishhouses. "Rule 45 subpoenas . . . are subject to the same time constraints that apply to all of the other methods of formal discovery," *Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 123 (N.D. Ind. 2001), and requests for documents must be served at least 30 days prior to the discovery deadline in order to allow for production within the discovery period. See *Shadle v. First Financial Bank*,

8

N.A, 2009 WL 3787006, *1 (N.D. Ind. Nov. 10, 2009). Indeed, a "party should [not] be allowed to employ a subpoena after a discovery deadline to obtain materials from a third party that could have been produced in discovery." *Dreyer*, 204 F.R.D. at 123. That is precisely what Martell did here, and they now seek to overcome summary judgment using documents obtained outside the discovery period where the Tishhouses had no ability to investigate or challenge them. Refusing to consider that late-gathered evidence at the summary judgment phase is proper. See *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 603–04 (7th Cir. 2024) (excluding various documents from consideration where "the documents were turned over long after discovery closed, [and the Defendant] also had not had an opportunity to contest the evidence, leading to prejudice"); *Black v. Youngue*, No. CIV.A. 14-505, 2014 WL 7335030, at *4 (W.D. Pa. Dec. 19, 2014) ("Additionally, the Court finds it completely unreasonable for a party to acquire documents after discovery has closed, without permission from the Court, without notice to the other side, and just 13 days from the summary judgment deadline, with intent to use that material in its motion for summary judgment and/or trial . . . The Court finds that the appropriate sanction is to prohibit Defendants from using the documents obtained from the subpoena for any purpose, including in support of his motion for summary judgment"); *Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000) ("Federal Rule of Civil Procedure 16 permits the district court to set deadlines for the disclosure of evidence and to impose sanctions on a party for failing to meet a deadline . . . Unless the failure to meet a deadline was either harmless or substantially justified, the court may sanction a party by excluding its evidence." (internal citation omitted)).

In its proposed support brief attached to its Motion for Leave, Martell baldly claims the Tishhouses waived any right to object to the subpoenaed documents, citing one inapposite case.

9

That case, *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006), notes that objections not raised in discovery responses by parties (i.e., in responding to timely served interrogatories, requests for production, etc.) *"may* be waived." This says nothing about waiver of objections to untimely, third-party discovery. Indeed, a quote later from that case is more salient here:

> Throughout the range of the law, there are time limits imposed on litigants at every stage of the case: some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to deadlines do so at substantial peril to their and their clients' interests. Even a day's delay can be fatal.

*Id.* at 399. Martell served late third-party subpoenas and received responses after the close of discovery in violation of the Federal Rules of Civil Procedure and this case's scheduling order. See ECF No. 28 (making clear that the "last month of discovery [is for] the purpose of concluding your work, not extending it."). It cites to no law that suggests the Tishhouses somehow waived the ability to object to the inclusion of that evidence in their summary judgment briefing, which is required by this Court's local rules. Martell's delay in seeking those documents—which it admits it was aware of earlier in discovery—is fatal. *Id.*; *Dreyer*, 204 F.R.D. at 123; *Chicago Joe's Tea Room, LLC*, 94 F.4th at 603–04; *Black*, 2014 WL 7335030, at *4; *Firefighter's Inst. for Racial Equal.*, 220 F.3d at 902.

Finally, much like its tortious interference claims, Martell's claims for breach of the Acquisition Agreement based on the Tishhouses ordering supplies in their name suffers other, larger deficiencies that render the Kendall Electric documents mostly moot and the Generac documents completely moot. The Acquisition Agreement does not specifically state what entity must order the materials and did not require the Tishhouse entity to terminate. Moreover, Martell specifically told the Tishhouses to order supplies from Generac under their own name, foreclosing any claims based on ordering from Generac and casting serious doubt on claims regarding ordering

10

supplies from any other suppliers. ECF 59 SMF at ¶ 50. The Tishhouses were not prohibited from ordering supplies in their own name by the Acquisition Agreement, and Martell encouraged them to do so. Consideration of the voluminous records obtained after discovery closed will not affect the summary judgment analysis and will waste the Court and the parties' time and resources.

## CONCLUSION

This Court should disregard Martell's attempt to prolong the briefing on these evidentiary issues where Martell had the chance to validate its last-minute evidence when it relied on that evidence in its response brief; where the affidavit Martell seeks to enter into evidence is a sham affidavit that contradicts sworn testimony, relies on hearsay, and was clearly put together hastily, post-discovery to save an already weakly supported claim from dismissal by attempting to contrive a factual dispute; and where the third-party documents Martell seeks to introduce into evidence and rely upon in response to the Tishhouses Motion for Summary Judgement were obtained after the close of discovery and after the Tishhouses had an opportunity to vet them in discovery. There are good reasons, both procedurally and substantively, noted in this objection for this Court to deny Martell leave. Martell should not be able to rescue itself, at this late hour, from its own conclusive testimony and missed deadlines. Its motion should be denied.

## CONCLUSION

For the reasons stated herein, Defendants/Counter-Plaintiffs respectfully request this Honorable Court **DENY** Martell's Motion for Leave.

Respectfully submitted,

Date: July 16, 2024                REVISION LEGAL, PLLC

/s/Eric Misterovich
Eric Misterovich
Revision Legal, PLLC
eric@revisionlegal.com

*Attorneys for Defendants/Counter-Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date below, the foregoing was served on counsel of record via the Court's ECF system.

Respectfully submitted,

Date: July 16, 2024

REVISION LEGAL, PLLC

/s/Eric Misterovich
Eric Misterovich
*Attorneys for Defendants*
Revision Legal, PLLC
8051 Moorsbridge Rd.
Portage, MI 49024
269-281-3908
eric@revisionlegal.com

*Attorneys for Defendants/Counter-Plaintiff*