UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

MARTELL ELECTRIC, LLC,

    Plaintiff/Counter-Defendant,   Case No. 3:22-cv-00430

v.   Hon. Cristal C. Brisco

STEPHEN TISHHOUSE,   Hon. Michael G. Gotsch, Sr.
CARRIE TISHHOUSE, and
TISHHOUSE ELECTRIC, INC.,

    Defendants/Counter-Plaintiffs.
_____/

| | |
|---|---|
| SOPKO, NUSSBAUM, INABNIT & KACZMAREK<br>Brent E. Inabnit (#17387-71)<br>Kevin E. Warren (#26638-64)<br>Jessica R. Merino (#31759-17)<br>5th Floor – Plaza Building<br>210 South Michigan Street<br>South Bend, IN 46601<br>(574) 234-3000<br>brenti@sni-law.com<br>kevinw@sni-law.com<br>jessicam@sni-law.com<br><br>*Attorneys for Plaintiff/Counter-Defendants* | REVISION LEGAL, PLLC<br>Eric W. Misterovich (P73422)<br>8051 Moorsbridge Rd.<br>Portage, MI 49024<br>(269) 281-3908<br>eric@revisionlegal.com<br><br>*Attorneys for Defendants/Counter-Plaintiff* |

_____/

**DEFENDANT/COUNTER-PLAINTIFFS' MOTION FOR RECONSIDERATION OF OPINION AND ORDER [ECF 65]**

Defendants/Counter-Plaintiffs Stephen Tishhouse, Carrie Tishhouse, and Tishhouse Electric, Inc. (the "Tishhouses"), by and through their attorneys, Revision Legal, PLLC, state as follows for their Motion for Reconsideration of Opinion and Order [EFC 65].

FACTS AND PROCEDURAL POSTURE

This Court is familiar with the facts of this case, and its recent Opinion and Order outlines the bulk of the material facts related to this matter. [ECF 65.] In its Opinion and Order, this Court sorted through several cross motions for judgment on the pleadings and for summary judgment. Here, the Tishhouses seek reconsideration of only one of those rulings. In its Opinion and Order, this Court granted judgment as a matter of law in favor of Plaintiff/Cross-Defendant Martell Electric, LLC ("Martell") on the Tishhouses' motion for summary judgment on Count I their counterclaims, which was for breach of contract as to Martell's breach of the Tishhouses' employment contract with Martell (hereinafter referred to as the Tishhouses' "employment claim"). The following factual recitation will be limited to facts germane to that employment claim.

On June 18, 2021, the parties entered into an Asset Acquisition Agreement (the "Acquisition Agreement") in which Tishhouse Electric, Inc. sold substantially all its assets to Martell. A true and accurate copy of the Acquisition Agreement has been filed under seal with the Court at ECF 10-1.

Prior to signing the Acquisition Agreement, John Martell and Stephen Tishhouse engaged in conversations regarding potential acquisition, including the hiring of the Tishhouses for a set employment period. (ECF 48, pp 3-4). After some negotiations between the parties, it was determined the Tishhouses would each work for Martell for at least two years after the Acquisition Agreement was completed. (ECF 48-1; 48-2; 48-3; 48-4; 48-5; 48-6; 48-7, Martell Corp. Deposition, John Martell, p.29:25-30:1-3; p.52:7-16). This agreement was memorialized in a "Term Sheet" that was ultimately attached to the final Acquisition Agreement. (ECF 10-1, p. 16.) The Term Sheet indicated that "Stephen Tishhouse would be offered a position at Martell out of

1

the Portage MI office as Senior Service Manager for at minimum two years" and "Carrie Tishhouse would be offered a position as Administrative Coordinator in the Portage Office…this position will also have at minimum a two year agreement." (ECF 10-1, p. 18.) The Term Sheet also listed the salaries for both Tishhouses, and described their job duties. (ECF 10-1, p. 18.)

The Acquisition Agreement states at Section 5.5: "The parties contemplate entering into at-will Employment Agreements with Stephen Tishhouse and Carrie Tishhouse consistent with the terms of the Term Sheet between the parties, attached hereto as Exhibit 3, and as otherwise mutually agreeable to the Parties." (ECF 10-1, p. 6). The Term Sheet makes clear the offer to the Tishhouses of "at minimum of two years" of employment is part of the "transaction terms" of the "purchase of all the assets…." (ECF No. 10-1, p.16 (see introductory paragraph)). Martell expressly acknowledged same. (ECF No. 10-1, p. 19 ("I believe the above reflects [your] letter, our previous term sheet and our discussions.")). And the Tishhouses testified that they would not have signed the agreement but for the two-year employment guarantee given the artificially low purchase prices of the assets. (ECF 48-8 at ¶ 8; 48-9 at ¶ 8). Thus, all available evidence shows that the Tishhouses' employment, the material and essential elements of which are embodied in the Term Sheet attached to the Acquisition Agreement, were part of the consideration for the Acquisition Agreement.

Despite this clear intent, the final draft Acquisition Agreement—which was provided to the Tishhouses at 4:47p.m. on the date of closing and accompanied by a statement from Martell that if the Tishhouses did not sign that day, the deal would fall through—introduced, for the first time, the "at-will" language found in Section 5.5. (ECF 56, pp 8-10 (discussing the last-minute changes and citing to the relevant record evidence regarding same)). It is the only mention of "at-will" employment in the Acquisition Agreement, its attachments, or any of the pre-agreement

2

evidence submitted to the Court. It is also couched by the language "consistent with the terms of the Term Sheet," which, as Stephen Tishhouse testified to, reflected the very clear and obvious terms negotiated by the parties to date. (ECF 50-2, Stephen Tishhouse Deposition, p. 31:18-25).

After signing the Acquisition Agreement, the parties never executed any other employment agreements, yet alone any agreements indicating any terms of employment different than those contained within the Term Sheet at Exhibit 3 to the Acquisition Agreement. (ECF 48-8, Martell Corp. Deposition, John Martell, p.58:5-8 (Q: "Were any other employment agreements entered into between Martell and the Tishhouses? A: "No.")). In fact, Martell seemed to believe this was somehow the Tishhouses' responsibility; however, Martell never bother to follow up on whether this was completed. (ECF 48-7, Martell Corp. Deposition, John Martell, p.58:9-25-59:1-11).

Despite the Acquisition Agreement and the incorporated Term Sheet indicating Stephen and Carrie were to have a minimum two years of employment, Martell terminated their employment after just 298 days, on April 15, 2022. (ECF 48-12).

On May 15, 2024, the Tishhouses moved for summary judgment on several of their claims as well as Martell's claims, including the Tishhouses' employment claim. (ECF 46). This Court denied the Tishhouses' summary judgment on its employment claim and granted summary judgment for Martell on same. (EFC 65, p 18). The Court determined that the language of the Acquisition Agreement was unambiguous, and that Section 5.5 of the Acquisition Agreement was simply an agreement by the parties to agree on the Tishhousess employment at a later date. (ECF 65, pp 14-15).

## ARGUMENT

The Tishhouses now ask this Court to reconsider its decision to deny their employment claim as a matter of law due to a clear and material error made by this Court. This Court found

that the parties did not "make an enforceable contract which obligate[d] them to execute a subsequent final written agreement" where "Section 5.5 [of the Acquisition Agreement] does not demonstrate an agreement on all essential terms." [ECF 65, p 15]. However, the Court did not support the latter claim regarding a lack of essential terms with legal authority or record facts; indeed, under Indiana law, the Acquisition Agreement *did* contain all the essential terms of an employment contract and was therefore enforceable. This finding was clearly erroneous and material, and where matters of contractual interpretation are matters of law, judgment should have been rendered in the Tishhouses' favor, not in favor of Martell. See *Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006) ("Generally, the construction of a written contract is a question of law for which summary judgment is particular appropriate.").

Fed. R. Civ. P. 54 allows a party to move for reconsideration of a partial judgement any time before a final judgment is issued. Fed. R. Civ. P. 54(b) (" . . . any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Fed. R. Civ. P. 60 also allows a party to seek reversal of a judgment for several reasons, including "mistake." Fed. R. Civ. P. 60(b)(1).

The Seventh Circuit has held that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982)); see also *Kohl v. Murphy*, 767 F. Supp. 895, 904 (N.D. Ill. 1991) (noting that motions for reconsideration exist to "correct clear errors of law"). This Court has adopted the "clear error" standard, which requires a

4

showing a "definite and firm conviction that a mistake has been committed." *United States v. Lyons*, No. 3:02CR133(01)RM, 2008 WL 4371344, at *1 (N.D. Ind. Sept. 17, 2008) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).

Here, the Court clearly erred in finding that the Acquisition Agreement did not contain an enforceable employment contract via Section 5.5 and the included Term Sheet. As the Court notes in its Opinion and Order, "in some cases, a preliminary agreement may be enforceable." (ECF 65, p 15). The Court cited two cases to support that proposition: *Block v. Magura*, 949 N.E.2d 1261, 1266–67 (Ind. Ct. App. 2011) and *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996). Both cases found that "parties may make an enforceable contract which obligates them to execute a subsequent final written agreement." *Block*, 949 N.E.2d at 1266; see also *Wolvos*, 668 N.E.2d at 674. For such an agreement to be enforceable, "[i]t is necessary that [the] agreement shall have been expressed on *all essential terms*, such that the final document is understood to be a mere memorial of the agreement already reached and may not contain a material term that is not already agreed upon." *Id.* (emphasis added); *Wolvos*, 668 N.E.2d at 678. The *Wolvos* court wrote:

> The universal rule is that a contract to be specifically enforceable must be complete in its *essential and material terms*, and capable of being enforced without adding to its terms. A corollary to this rule is that where the contract does contain the essential elements it is not incomplete or indefinite because it fails to . . . include other non-essential provisions which might properly have been incorporated in the agreement. *Such matters may be left open for future specification without destruction of the contract or depriving a party remedy for its enforcement . . .*

668 N.E.2d at 678 (quoting *Ray v. Wooster*, 270 S.W.2d 743 (Mo. 1954) (emphasis added)). In other words, not *every* term must be agreed upon to render an agreement enforceable, as long as the essential and material terms are.

This Court properly delineated that standard, but then improperly concluded the Acquisition Agreement between the parties in this case did not contain all the essential terms. (ECF

5

65, p. 15). The Court did not identify what material terms are required for an employment contract, and it did not cite to the terms included in the Parties' Acquisition Agreement or consider whether they are essential terms under the law.

Under Indiana law, "[t]he essential terms for employment contracts include: (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; and (4) the compensation the employee is to receive." *Vukadinovich v. Posner*, No. 2:22-CV-118-TLS-JPK, 2023 WL 4931648, at *22 (N.D. Ind. June 21, 2023), report and recommendation adopted as modified, No. 2:22-CV-118-TLS-JPK, 2023 WL 6211835 (N.D. Ind. Sept. 25, 2023) (citing *Majd Pour v. Basic Am. Med., Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987)). Indeed, "[o]nly essential terms need be included to render a contract enforceable." *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016). "To be valid and enforceable, the essential contract terms 'must be reasonably definite and certain.'" *Vukadinovich*, 2023 WL 4931648, at *22 (quoting *Allen v. Clarian Health Ptners., Inc.*, 980 N.E.2d 306, 309 (Ind. 2012)). "Only 'reasonable' certainty is necessary; absolute certainty in all terms is not required." *Id.* (quoting *Jernas*, 53 N.E.3d at 445); see also *Bryant v. Gardner*, 587 F. Supp. 2d 951, 972 (N.D. Ill. 2008) ("Even though the agreement does not address every aspect of Plaintiff's employment, a contract need not provide for every collateral matter or every possible contingency which might arise. Rather, [a] contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." (internal quotes and citations omitted)).

Here, the Term Sheet includes *all* four of the essential elements for an employment contract under Indiana law for both Stephen and Carrie Tishhouse. It identifies (1) the place of employment (Martell's Portage office); (2) the period of employment (minimum two year period for both

6

Stephen and Carrie); (3) the nature of the services the Tishhouses were to render—as well as their titles—(estimating and managing service work as a Senior Service Manager for Stephen; support of the office management, estimating purchasing, etc. as Administrative Assistant Coordinator for Carrie); and (4) the Tishhouses' compensation rates (current IBEW General Foremen's rate for Stephen; $70,000 for Carrie). (ECF No. 10-1, p 18); *Vukadinovich*, 2023 WL 4931648, at *22; *Majd Pour*, 512 N.E.2d at 439. In fact, highlighting the extent of the agreement between the parties, the Term Sheet contains additional terms that are *not* essential to the formation of an employment contract. Specifically, it provides an option for an extension of the agreement, paid vacation terms, and the ability for Carrie to participate in Martell's employee stock option plan. (ECF No. 10-1, p 18).[1]

Where all the essential terms (alongside even more granular, unessential terms) for an employment contract were included in the Term Sheet, and where the Term Sheet was expressly adopted into the Acquisition Agreement by Section 5.5, the employment agreement reached by the parties was enforceable. ECF No. 10-1, p. 6 ("The parties contemplate entering into at-will Employment Agreements with Stephen Tishhouse and Carries consistent with the terms of the Term Sheet between the parties, attached hereto as Exhibit 3 . . ."); *Vukadinovich*, 2023 WL 4931648, at *22; *Majd Pour*, 512 N.E.2d at 439; *Block*, 949 N.E.2d at 1266; *Wolvos*, 668 N.E.2d at 678. The signing of the Acquisition Agreement on June 18, 2021 was not the parties agreeing to agree at a later date, it was the parties entering into an enforceable employment agreement pursuant to all the required essential terms for same. Indeed, the Tishhouses' employment pursuant to the terms found in the Term Sheet were part of the consideration of the Acquisition Agreement.

---

[1] If any portion of the employment terms was left open, and rendered an agreement to agree, it was the "at will" status of the Tishhouses' employment in the future after the Tishhouses were to be employed consistent with the Terms of the Term Sheet.

7

(ECF No. 10-1, pp 16, 18). Moreover, the parties moved forward acting under those enforceable terms up and until Martell decided it no longer wanted to honor one of the terms—the period of employment—and fired the Tishhouses in breach of the Acquisition Agreement.

Importantly, the parties entered into an enforceable employment agreement on June 18, 2021 even with the language in Section 5.5 regarding the parties' intent to "contemplate" at-will employment. The Court itself correctly framed the *Block* and *Wolvos* opinions as providing an alternative theory of enforceability in light of the language found in Section 5.5, but it then failed to analyze the law and facts under that alternative theory.

As argued in the Tishhouses' motion for summary judgment, courts "must accept an interpretation of the contract which harmonizes its provisions, rather than one that places the provisions in conflict." *Noble Roman's, Inc. v. Hattenhauer Distributing Company*, 307 F.Supp.3d 907, 918 (S.D.Ind. 2018). "Generally, the courts should presume that all provisions included in a contract are there for a purpose and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions." *Davis v. Frontiersmen, Inc.*, 2023 WL 5381778, at *2 (N.D.Ind. 2023). "And, in reading the terms of a contract together, we keep in mind that the more specific terms control over any inconsistent general statements." *Noble Roman's, Inc.*, 307 F.Supp.3d at 918. The Court's decision to give sole, controlling effect to the words "contemplate" does not harmonize the language of the Acquisition Agreement; it completely discounts *all* the terms in the Term Sheet[2] and negates the language in Section 5.5 that the Tishhouses' employment would be "consistent with the terms of the Term Sheet." The Court ignored the Tishhouses' proposed harmonizing of the language of the Agreement—that they had an employment agreement consistent with the terms of the Term Sheet and that the parties would contemplate at-will

---

[2] The Term Sheet makes clear the offer to the Tishhouses of "at minimum of two years" of employment is part of the "transaction terms" of the "purchase of all the assets…." (ECF No. 10-1, p.16 (see introductory paragraph)).

8

employment after the period of employment found in the Term Sheet expired—and instead interpreted the Acquisition Agreement in such a way as to render contractual language ("consistent with the terms of the Term Sheet") and an entire attachment—which represented months of negotiations between the parties—completely nugatory. This was clear error. See *Noble Roman's, Inc.*, 307 F.Supp.3d at 918; *Davis*, 2023 WL 5381778, at *2.[3]

Finally, the Court's finding that the merger clause found in the Acquisition Agreement obviated the Term Sheet does not impact the above analysis. The Court found that "[e]ven if the Term Sheet was an enforceable contract at the time it was executed on May 25, 2021 . . . any employment agreement provided for in the Term Sheet was cancelled when the parties entered into the Agreement" due to the merger clause found at Section 8.1 of the Agreement. (ECF 65, p. 16). The employment agreement between the parties was agreed to on June 18, 2021 when the parties singed the Agreement that expressly included the Term Sheet as defining the scope of said employment agreement and as part of the consideration of the entire asset purchase. It was not a "prior agreement" between the parties subject to merger.

In sum, the parties had an enforceable employment agreement as of June 18, 2021 when they signed the Acquisition Agreement, which included all the essential elements of an employment contract. By failing to identify what essential elements are required of an employment contract and failing to find those elements present in the Acquisition Agreement, all while acknowledging that their presence would create an enforceable contract, this Court clearly erred. And where matters of contractual interpretation are matters of law, judgment should have been rendered in the Tishhouses' favor, not in favor of Martell. See *Automation By Design, Inc. v.*

---

[3] To the extent the Court believes an ambiguity exists on this issue, this Court should determine a patent ambiguity exists and apply the more specific terms of the Term Sheet as argued in the Tishhouses' motion for summary judgment. [ECF 47, pp 8-10.]

9

*Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006) ("Generally, the construction of a written contract is a question of law for which summary judgment is particular appropriate.").

Martell's last minute addition of the "contemplate" and "at-will" language to the Acquisition Agreement, while maintaining the "consistent with the terms of the Term Sheet" language, created an awkward combination of an agreement to agree about at-will employment in the future while maintaining the clear and express incorporation of all the essential elements of an enforceable two-year employment contract. But the Court's failure to discuss and ultimately find that those essential elements were present, and that an enforceable two-year employment contract between the parties exists, leads to the absurd result of washing away the very clear intent of the parties. Indeed, all available evidence shows that the parties meant for the Tishhouses to have a two-year employment term *at least* and that said employment was a material part of the consideration for the entire asset purchase agreement.

## CONCLUSION

The Tishhouses respectfully request this Court reconsider its decision to grant summary judgment in favor of Martell as to the Tishhouses' employment claim, reverse its decision as to same, and grant summary judgment for the Tishhouses' on their employment claim pursuant to the same law cited by this Court in its Opinion and Order and for the reasons more fully described above.

Respectfully submitted,

Date: February 21, 2025                REVISION LEGAL, PLLC

/s/Eric Misterovich
Eric Misterovich
*Attorneys for Defendants*
Revision Legal, PLLC
8051 Moorsbridge Rd.
Portage, MI 49024

        269-281-3908
        eric@revisionlegal.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date below, the foregoing was served on counsel of record via the Court's ECF system.

        Respectfully submitted,

Date: February 21, 2025        REVISION LEGAL, PLLC

        /s/Eric Misterovich
        Eric Misterovich
        *Attorneys for Defendants*
        Revision Legal, PLLC
        8051 Moorsbridge Rd.
        Portage, MI 49024
        269-281-3908
        eric@revisionlegal.com